The People ex rel The Gas-light Company of Syra-cuse, Appellant, *v.* The Common Council of the City of Syracuse, Respondent.

Although the granting or refusal of a writ of mandamus is regarded as discretionary, as distinguished from a writ of right, it is not an absolute or arbitrary discretion, but is to be exercised under, and may be regulated and controlled by legal rules; and the exercise of the discretion is reviewable here.

Where the writ is refused, and it appears that there is a clear legal right, and that there is no other adequate remedy, the order or judgment may be reversed.

Where the relator has for an unreasonable time slept upon his rights, the court may refuse the writ.

In determining what will constitute such unreasonable delay, regard should be had to circumstances justifying the delay, to the nature of the case, the relief demanded, and to the question whether the rights of defendant or other persons have been prejudiced by the delay.

Where proceedings, by a municipal corporation, to condemn lands for public purposes have so far progressed that the amount of compensation to be paid to the owner has been fixed as a finality, the proceedings cannot be discontinued and abandoned by the municipal authorities; the owner has a vested right to the compensation, and payment may be enforced according to the statute under which the proceedings were instituted. This right may precede the vesting of the title in the corporation.

Under the provisions of the charter of the city of Syracuse (§§ 1–6, title 8, chap. 63, Laws of 1857), providing for the laying out of streets, etc., an appeal may be taken by any person aggrieved from the report of the commissioners appointed to ascertain the compensation of lands to be taken for street purposes, within ten days after the filing of the report. In case there is no appeal, it is declared (§ 21) that "the common council *shall* direct the commissioners making the award to assess the amount awarded for damages" upon the property benefited; upon payment or tender of the amount awarded, the fee of the land vests in the city (§ 6). In proceedings under said charter, the report of the commissioners was filed, and no appeal therefrom was taken by either party within the time allowed. In proceedings by the owner to compel the common council by mandamus to proceed to the assessment and collection of a tax to pay the relator the sum awarded, *held,* that the omission to appeal rendered the award final and conclusive at the expiration of the ten days from filing report, and the owner had a vested right to have said sum assessed and collected according to the terms of the statute; that the common council could not thereafter discontinue the proceedings, or deprive the relator of such right; and that he was entitled to a mandamus to compel the performance of the duties so imposed by the statute upon the common council.

Statement of case.

The commissioners filed their report December 11, 1871; the common council passed a resolution October 13, 1873, abandoning and discontinuing the proceedings. Application for a mandamus was made June 29, 1875; the relator alleged that he had often requested the common council to make the assessment. It did not appear that he knew of the attempted rescission by the common council, nor was any change of circumstances shown rendering the improvement impracticable or specially injurious to defendant or to individuals. *Held,* that the delay was not fatal to the right of the relator to the remedy sought; that he having shown a fixed legal right to the compensation, a mere delay of the character here shown was not sufficient to deprive him of this right; and that therefore it was error to refuse the writ.

*People* v. *Delaware Com. Pleas* (2 Wend., 257); *People* v. *Seneca Com. Pleas* (6 id., § 17); *King* v. *Canal Co.* (1 M. & S., 35); *King* v. *Commissioners* (20 Eng. Com. Law, 525), distinguished.

(Argued May 27, 1879; decided September 16, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment denying an application for a mandamus.

The nature of the writ sought for and the facts appear sufficiently in the opinion.

*George F. Comstock,* for appellant. The relator was entitled to the writ of mandamus asked for. (*In re Com'rs of Washington Park,* 56 N. Y., 144; *People* v. *City of Syracuse,* 20 How. Pr., 491; *Harrington* v. *Com'rs.,* 22 Pick., 263.)

*Martin A. Knapp,* for respondent. The proceedings to acquire title to the land in question had not progressed so far as to prevent the common council from discontinuing and abandoning them *in toto.* (Title 8, §§ 1, 6 of charter; *In the Matter of Com'rs of Washington Park,* 56 N. Y., 114; *N. F. R. R.* v. *Hotchkiss,* 16 Barb., 220; *Cramer* v. *W. R. R.,* 9 How., 457; *H. R. R. R. Co.* v. *Outwater,* 3 Sand., 649; *B. and S. R. R.* v. *Nesbitt,* 10 How. [U. S.], 395; *In re. Anthony Street,* 20 Wend., 618; *In re Dover Street,* 18 J. R., 506; *In re Wall Street,* 17 Barb., 618; *R.*

*and S. R. R. Co.* v. *Davis*, 43 N. Y., 137; *In re R. and Com. R. R. Co.* v. *Radcliff*, 67 id., 242.) The writ of mandamus in this case was properly refused, because the relator allowed so much time to elapse before making application for it. (*People* v. *Seneca Common Pleas*, 2 Wend., 264; 2 Crary's Spec'l Proc., 62; *Fish* v. *Weatherway*, 2 Johns. Cas., 215; 5 Wait's Pr., 572.) The allowance of a writ of mandamus rests ordinarily in the sound discretion of the court, and upon the facts in this case, the Supreme Court was justified in refusing it. (*People ex rel. Mott* v. *Board of Supervisors*, 64 N. Y., 604; *People* v. *Hawkins*, 46 id., 9; *People* v. *Croton Board*, 49 Barb., 264; *Ex parte Ostrander*, 1 Den., 679; *Judges of Oneida Common Pleas* v. *People*, 18 Wend., 79, 98; *People* v. *Dowling*, 37 How., 394; 55 Barb., 197; *People* v. *Duff*, 49 Barb., 31; *People ex rel. Slavin* v. *Wendell*, 71 N. Y., 172.) Where public officers or corporations have themselves a discretion with reference to the performance of any act, the operation of this writ as to them is the same as when directed to inferior judicial tribunals. (*People* v. *Brennan*, 1 Abb. [N. S.], 184; *People* v. *Collins*, 19 Wend., 56; *Fish* v. *Weatherwax*, Johns. Cas., 215, 217.)

Church, Ch. J. This is an appeal from a judgment, denying a mandamus to compel the common council of the city of Syracuse to proceed to the assessment and collection of a tax sufficient to pay the relator, and another property owner the appraised value of lands proposed to be taken for street purposes. The commissioners appointed to appraise the value of the lands, filed their report December 11, 1871, and on October 13, 1873, the common council passed a resolution rescinding the original resolution to widen the street and condemn lands therefor, and declared that all proceedings taken pursuant thereto were abandoned and discontinued. The application for a mandamus was made June 29, 1875. The two material questions presented are: First. Whether the common council had the legal right as

against the property owners to discontinue the proceedings. Second. If this should be determined in the negative, whether the lapse of time and other circumstances justified the judgment refusing a mandamus.

As to the first question, the relative rights of municipal authorities seeking to condemn land for public purposes, and of property owners, including the power to discontinue the proceedings, were fully considered by this court in the recent case (*In re Comm'rs of Washington Park*, 56 N. Y., 144), and the result was reached that, up to the period when the owner had a fixed right to a particular compensation for his property, the municipal authorities might discontinue and abandon the proceedings; but after such compensation became unalterably fixed, property owners had a vested right to such compensation, and it would follow that payment could be enforced according to the statutes under which the proceedings were instituted. This may pre-exist the vesting of the title to the land in the municipal corporation, which, according to the Syracuse charter, did not occur until actual payment or tender. It is sufficient if the amount of compensation has been fixed as a finality. In the case cited, the statute provided for confirmation of the report of the commissioners appointed to appraise the damages, and it was held that until confirmation the proceedings might be discontinued, but could not after that event. This rule was in accordance with the street cases arising in the city of New York and Brooklyn. (*Corporation of New York* v. *Dover Street*, 18 J. R., 507; *In re Beekman Street*, 20 id., 269; *Corporation of New York* v. *Mapes*, 6 J. Chy., 49; *People* v. *Brooklyn*, 1 Wend., 319; *Matter of Canal Street*, 11 id., 154; *Martin* v. *Brooklyn*, 1 Hill, 545; *Matter of Anthony Street*, 20 Wend., 620.) In the Syracuse charter, no provision is made for confirming the report of the commissioners, but an appeal may be taken by any party aggrieved within ten days after the filing of the report. No appeal was taken in this case by either party. The statute declares, that if no appeal is taken, the

common council *shall* direct the same commissioners who made the award to assess the amount awarded for damages upon property benefited, and upon the city at large as they shall deem just. The counsel for the city contended that some affirmative act on the part of the city was necessary to bind it, but there is nothing in the statute favoring this view. The omission to appeal from the award until the expiration of the time allowed for that purpose, rendered the award as final and conclusive as the formal confirmation provided in other statutes. During that period the common council if they thought the awards too high, or for any reason that public interest rendered it inexpedient not to proceed with the improvement, might have discontinued the proceedings. By allowing this period to elapse, they must be deemed to have acquiesced in the report, and the award must be regarded as a finality, and in the nature of a judgment which the property owner has a vested right to have assessed and collected according to the terms of the statute. The rule sanctioned in the *Washington Park Case*, and here indicated, while I regard it as right and just, is quite as liberal in favor of the public, and as rigorous against property owners as can be justified consistently with the rights of the latter. It enables the municipal authorities to determine whether public interest will be subserved by consummating the improvement after the expense has been ascertained, while the rights of the property owner are uncertain until the award becomes final. The English rule is more favorable to property owners, and binds the municipality from the time of the statutory notice of an intention to condemn the land is served. (*King* v. *Com'rs of Market St., Manchester*, 4 B. & Adol., 335; *King* v. *Hungerford Market Co.*, id., 327; *Stone* v. *Com. Railway Co.*, 4 Myl. & Craig, 122; *Walker* v. *Railway Co.*, 6 Hare, 594.) The relation of the parties after the award becomes final, is somewhat analogous to that of vendor and vendee under an executory contract of sale.

We are of opinion that the award in this case became at the expiration of ten days from the filing of the report

of the commissioners final and conclusive upon both parties, and that the relator then had a legal right to compel the performance of the duties enjoined by statute upon the common council for the assessment and collection of the amount awarded. It follows that the common council could not by resolution or otherwise deprive the relator of that right, and that the resolution of rescission as to him was unauthorized and void.

As to the question whether the court below was justified in refusing a mandamus on account of the lapse of time which intervened, there is more embarrassment. The writ of mandamus is called a prerogative writ. It originated from a necessity to furnish a remedy to compel the performance of a specific duty, in cases where the ordinary forms of legal procedure, furnished no adequate remedy, and issued by the exercise of the sovereign power of the king, who originally sat in the king's bench in person. (1 Bl. Com., 239.) As this exercise of power could not be controlled, the issuing of the writ was necessarily discretionary, and was liable to be issued or refused as the king might see fit.

When the power became vested in the courts of England, and when transmitted to our own courts, it has been, and is still regarded as discretionary as distinguished from a writ of right. But although in this sense discretionary in the court to grant or refuse this remedy, yet it is not an absolute and arbitrary discretion, but the power is to be exercised, and may be regulated and controlled by certain rules of law dictated by experience, and incorporated into our system of judicature. (*Fish* v. *Weatherwax*, 2 Jo. Cas., 215, note, and cases cited.) The distinction between an absolute discretion, and that which is governed by legal rules is well recognized. The former is not reviewable, the latter is. (*Howell* v. *Mills*, 53 N. Y., 322.) This case belongs to the latter class. There must be a clear legal right. We have seen that such right existed. There must be no other adequate remedy. It is not disputed that such

was the fact. It is insisted that the relator has lost his right by delay. Some delay was necessary. The commissioners were to be put in motion, local assessments, and perhaps general assessments were to be made, perfected, and collected, and this would occupy an indefinite period of time. How long does not appear. The case seems to have been tried upon the pleadings, and it was alleged that the relator had often requested the common council to make the assessment. It nowhere appears what answer was made to these applications, whether the council refused, or promised performance, so that up to the period of the resolution of abandonment there is nothing in the case to show a want of vigilance on the part of the relator or any indisposition on the part of the common council to perform their duty. But after that it is argued that from the lapse of time before applying for the writ, about twenty months, it may be inferred that the relator acquiesced in the abandonment, and it is laid down as a rule, that a party must not sleep upon his rights. There would be some force in this position if it appeared that the relator knew of this action of the common council, but this fact is neither alleged, nor proved. I have been unable to find any authority for the position that a mere delay of this character has been fatal to the right of a party to this remedy, when a clear legal and substantial right has been shown. In *People* v. *Delaware Common Pleas* (2 Wend., 257), the court refused a mandamus to compel the common pleas to quash an appeal for a defect in the appeal bond, five years after the case had been tried and disposed of. In the case of *The People* v. *Seneca Common Pleas* (2 Wend., 264), the court refused a mandamus to correct an error in the common pleas, one year after it was committed, placing the decision upon the ground of acquiescence. Both of these cases involved mere matters of practice, and the rules of relief were entirely discretionary. These cases are not controlling, even if they favor the doctrine that the mere lapse of time short of the period fixed as a bar for actions, is sufficient to authorize the refusal of the writ, for

the reason that the matters involved were governed by no fixed rules of law.

When the relator has for an unreasonable time slept upon his rights, the court may in the exercise of a sound discretion, refuse the writ. In determining what will constitute such unreasonable delay, regard should be had to circumstances which justify the delay, to the nature of the case, and the relief demanded, and to the question whether the rights of the defendant or of other persons have been prejudiced by such delay. (*Chinn* v. *Trustees*, 32 Ohio St. R., 236.) The difficulty with the case on the part of the defendant is that no facts were shown which would justify a refusal of the writ, except a delay which may in part at least have been caused by the defendant. There is nothing to show but that the plaintiff supposed that the proceedings were progressing, or that he thought an abandonment was contemplated, nor any change of circumstances shown, rendering the consummation of the improvement impracticable or specially injurious to the defendant or individuals. That question seems not to have been litigated on the trial. The circumstances should be shown which according to csi lished rules justify a refusal of the writ.

In *King* v. *Canal Co.* (1 M. & S., 35) there was ᵗⁿ and another remedy. In *King* v. *Commissione.* ᵗ Com. Law, 525) there was delay, and the issuing of ₓ ᵗ would have been prejudicial to the intervening private r₋ of others, and in all the cases circumstances appeared whic. according to settled rules of public policy warranted a refusal of the writ. (2 Crary's Prac., 51, 52, and cases cited; 5 Wait's Prac., 552.)

When the relator shows a fixed legal right to compensation for lands condemned for public purposes, a mere delay of the character appearing in this case, is not sufficient to deprive him of the right. (*People* v. *Board of Supervisors*, 12 Barb., 446.) The nature of the case is such that circumstances may exist rendering it improper to grant the writ, but no such facts appeared. A new trial may develop them.

Statement of case.

We do not deem it necessary to notice the other points. They are based upon supposed irregularities in the proceedings of the defendant, but neither of them is sufficient clearly to invalidate the proceedings, and if such should be the case it is not necessary to determine what effect it would have upon the relator's rights. As the case appeared, we think it was error to refuse the writ.

The judgment must be reversed and a new trial granted, costs to abide event.

All concur, except ANDREWS, J., absent.

Judgment reversed.