The People of the State of New York ex rel. John H. Millard, Respondent, v. Alfred C. Chapin, Comptroller, etc., Appellant.

The discretion of the court to grant or refuse a writ of *mandamus* is not absolute but is governed by legal rules, and its exercise is subject to review here.

The sufficiency of the evidence upon which is based a decision of the State comptroller as to who is entitled to the purchase-money paid upon an invalid sale of land for taxes, which he is required to refund out of the state treasury (§§ 80, 83, 85; chap. 427, Laws of 1855), may not be reviewed by *mandamus;* nor can the decision, even if wrong, be so rectified.

The writ does not lie to compel an officer exercising judicial functions to make any particular decision or to set aside a decision already made.

The mere record of a deed from the purchaser at an invalid tax sale, is not notice to the comptroller of the right of the grantee to have the purchase-money refunded to him.

Although the statute of limitations does not apply to the issuing of a writ of *mandamus,* the writ should not be granted after the period fixed by statute as a bar to an action has expired, when the delay is unexplained and unaccounted for.

*It seems,* that the writ may also, in the discretion of the court, be denied when the delay in moving it is unreasonable, although it falls short of the time allowed for commencing actions.

*People ex rel. Millard v. Chapin* (40 Hun, 386) reversed.

(Argued December 7, 1886 ; decided January 18, 1887.)

Appeal from order of the General Term of the Supreme Court, in the second judicial department, made May 10, 1886, which reversed an order of Special Term refusing a peremptory writ of *mandamus*, and which directed the issuing of said writ,

1887.]   THE PEOPLE ex rel. MILLARD *v.* CHAPIN.   **97**

Statement of case. '

requiring the State comptroller to refund to the petitioner the purchase-money paid on an invalid sale of land for taxes. (Reported below, 40 Hun, 386).

It appeared, that, at the State tax sale in 1859, a number of parcels of land in Erie county were struck off to one Henderson, who assigned his bids to Maurice E. Viele, to whom the State comptroller executed conveyances of the lands. Prior to 1877, the comptroller refunded to Viele the purchase-money of twelve of the lots, and in that year, upon an affidavit of Viele that he had sold and conveyed to John M. Peck "all the right, title and interest acquired by him from the tax sale, * * * so far as his title had not been destroyed by redemption or cancellation;" and upon other evidence the comptroller refunded to Peck the purchase-price of the other lots. In September, 1863, Viele conveyed all of his interest in the lots so purchased by him (except a few that had been redeemed) to Ogden H. Osborn, which conveyance was recorded in Erie county, in July, 1864. Ogden died intestate and his heirs-at-law and next of kin joined in a conveyance to the petitioner of all their right, title and interest in said lands.

Further facts appear in the opinion.

*Denis O'Brien*, attorney-general, for appellant. Viele's deed to Osborn was not such an assignment as carried with it the title to the purchase-money paid by Henderson. (*King* v. *Trustees of St. Pat'ks Cath.*, 4 East 721; Laws of 1855, chap. 427, § 85; 1 R. S. 39, § 143; Gerard's Tit. to Real Es. 525; *Veila* v. *Rodriguez*, 12 Wall. 323; *U. S.* v. *Slinly*, 21 Fed. Rep. 894; *May* v. *Leldaire*, 11 Wall. 232.) The deed from Viele to Osborn did not operate as an equitable assign-ment of the purchase-money paid by Henderson. (1 R. S. 738, § 140; *Adams* v. *Conover*, 87 N. Y. 422.) If the deeds to Osborn and the relator operated as an assignment, then the comptroller was protected by payment to Viele and Peck. (1 R. S. 756; *Heermans* v. *Fellows*, 64 N. Y. 169.) Proof of payment by the State to the purchaser, or his immediate assignees of the certificate, was sufficient. The relator must

show actual notice to the comptroller of the assignment to himself or to the person from whom he claims. (*Heermans v. Ellsworth*, 64 N. Y. 161.) The recording act has nothing to do with the assignment. (*Paige* v. *Waring*, 76 N. Y. 463.) Mandamus is not the proper remedy. If the comptroller committed any error, it should be reviewed by *certiorari*. (*Howland* v. *Eldridge*, 43 N. Y. 457; *People ex rel. Francis* v. *Com. Council*, 78 id. 33; *People ex rel. Hammond* v. *Leonard*, 74 id. 443; Code of Civ. Pro., § 2140; *People ex rel. Eq. L. As. Co.* v. *Chapin*, 39 Hun, 230; 103 N. Y. 635.)

*Abram J. Rose* for respondent. The order of the General Term, granting the writ of *mandamus*, was discretionary and is not appealable to this court. (*In re Sage* v. *L. S. & M. S. R. R. Co.*, 70 N. Y. 220; *People, ex rel. Lunney* v. *Campbell*, 72 id. 496; *People ex rel. Faile* v. *Ferris*, 76 id. 326; *People ex rel. Slavin* v. *Wendell*, 71 id. 171; *Platt* v. *Platt*, 66 id. 360.) The sale of 1859 was void, and the comptroller gave no title by his deed. (*Becker* v. *Holdridge*, 47 How. Pr. 429.) The act of 1855 was passed to provide against such invalid sales and to protect purchasers at tax sales. (Laws of 1855, chap. 427; 1 R. S. [7th ed.] 1031 §§ 83, 84, 85; *Corbin* v. *Com'rs of Wash. Co.*, 3 Fed. Rep. 356.) The deed from Viele and wife to Osborn carried with it the right to demand and receive the money from the comptroller that had been paid for the purchase. (3 R. S. [7th ed.] 2195 §§ 142, 143, 144.) Even if the deed passed no title to the land, because the grantor had none, yet it passed whatever interest and all interest the grantor had in the land or to the money, which stood in the place of the land. (*Jackson* v. *Bowen*, 7 Cow. 13; *Robinson* v. *Ryan*, 25 N. Y. 320; *Klock* v. *Buell*, 56 Barb. 398; *Danforth* v. *Suydam*, 4 N. Y. 66; *Spears* v. *Mayor, etc.*, 87 id. 359.) The comptroller had notice of this deed and he is estopped from setting upon any subsequent payment. (*Edward's Lessees* v. *Darby*, 12 Wheat. 210; Potter's Dwarris, 179.) *Mandamus* is the proper

1887.]    THE PEOPLE ex rel. MILLARD v. CHAPIN.    99

Opinion of the Court, per DANFORTH, J.

remedy. (Code of Civ. Pro., §§ 2120, 2122; *People* v. *Allen*, 42 N. Y. 408; *People* v. *Brown*, 55 id. 180; *People* v. *Clerk of Mar. Ct.*, 3 Abb. Ct. of App. 491; *Smith* v. *Comptroller*, 18 Wend. 659.)

DANFORTH, J.   By petition verified October 6, 1885, the relator applied at Special Term for a peremptory *mandamus*, requiring the comptroller to pay him $721.57, the sum, with interest, of moneys paid by a purchaser of fifty or more lots of land at an invalid tax sale made in 1859.   The application was denied at Special Term, but its order was reversed and the writ granted by the General Term.

The objection of the relator that the order is not appealable to this court, is not well founded.   The discretion of the court to grant or refuse the writ is not absolute, but governed by legal rules, and its exercise is subject to review. (*People ex rel. Gas-Light Co.* v. *Common Council of Syracuse*, 78 N. Y. 56.)   We agree with the Special Term that the relator failed to show any right to a *mandamus*.   On the contrary it appears that one Henderson, the purchaser at the tax sale, and who paid the price thereof to the comptroller, assigned his bids to one Viele, and the comptroller conveyed the lands by deed to him as such assignee on September 15, 1862.   The sale was invalid because the notice to redeem was not in compliance with the statute. (Laws of 1855, chap. 427, § 61.)   At various times between 1864 and 1877 the comptroller refunded to Viele the purchase-price of twelve of the lots now in question.   On January 22, 1877, Viele made an affidavit, which, after reciting the conveyance to him by the comptroller, stated that on September 23, 1863, he sold and conveyed to John M. Peck "all the right, title or interest acquired by him from the tax sale of 1859, in the lands conveyed to him by the comptroller, so far as his title had not been destroyed by redemption or cancellation."   This affidavit, with other evidence, was filed on that day in the office of the comptroller, and at different times thereafter, but prior to February 20, 1878, the purchase-price of all the

remaining lots was refunded by him to the said John M. Peck. This was, I think, a full compliance with the statute, and relieved the comptroller from further duty in the transaction. By the statute (*supra*, §§ 83, 85), it is made his duty, upon discovering the invalidity of a sale for taxes, to cancel the sale and " refund out of the State treasury to the purchaser, his representative or assignee, the purchase-money and interest thereon." It is not necessary to decide whether or not the statute (*supra*), is limited to the purchaser at the tax sale, and the assignee of the bid or purchase; Viele stood, indeed, in that relation to Henderson, and with his assent the money, which he did not receive in person, was paid to Peck. Nor is it necessary to decide that the right to reclaim the purchase would or would not pass by a conveyance of the land, or merely follow the person of the original purchaser. For there was also evidence before the comptroller that Viele had conveyed the lands to Peck. The sufficiency of that evidence is not to be reviewed by *mandamus*, nor can the decision of the comptroller, even if wrong, be so rectified. He exercised a jurisdiction which the law entrusted to him; the result complained of was a judicial determination, and the writ does not lie to compel an officer, exercising such functions, to reach any particular decision, or set aside a decision already made. (*People ex rel. Equitable Life Ins. Co.* v. *Chapin*, 103 N. Y. 635.) The propriety of his conduct, however, seems unquestionable. He had before him, in legal effect, Henderson the purchaser, Viele, his assignee, and Peck, a claimant with the sanction of Viele, the only persons who seemed to be connected with the tax sale, and with them, so far as he knew he might lawfully, and was required by the statute to deal. Upon what, then, is the relator's contention founded? On February 13, 1885, Maria L. Osborn, the widow, and children, heirs-at-law of one Ogden H. Osborn, in consideration of $25, conveyed to him by quit-claim deed the tax lands to which reference has already been made, and Maria L. Osborn, the administratrix of Ogden, also upon the same consideration, assigned to him all the interest which her intestate ever had,

" of, in and to any tax certificate, or to any privilege, right or benefit under any tax certificate or certificates, and to any and all money which should be or should have been refunded or repaid to said Ogden H. Osborn or to her as administratrix by the comptroller of the State of New York for any redemption from tax sale or cancellation of tax sale, or as grantee or assignee of any purchaser, or assignee of any purchaser, at a tax sale, or for any other cause whatever."

Osborn was grantee of Viele under a deed bearing date September 15, 1863, acknowledged February 28, and recorded in the proper clerk's office July 6, 1864. The learned counsel of the relator argues " that the comptroller had notice of this deed, and so is estopped from setting up any subsequent payments." But I find no evidence of that. The mere record of the deed was not notice. Nor is there any foundation for the assertion that the comptroller recognized its existence in any way. It is said upon the relator's points that " the comptroller made a payment to Osborn upon the deed for one lot which had been redeemed." I find nothing of the kind in the case, and the folio, to which alone we are referred, contains merely a description of the lot, and in substance that its sale was canceled and $15.68, the amount due, refunded by the comptroller to Ogden H. Osborn, March 21, 1864. Under what circumstances, or why this was done, does not appear ; certainly there is no reference to a deed or other title acquired by Osborn. It, doubtless, indicates that Osborn was in some way shown to be entitled to the money, but it has no tendency to show that he was thought to be, or that he claimed to be entitled to the price paid for any other lot, or to be the assignee of the tax title or the sum bid, or the grantee even of the purchaser, or of the assignee of the purchaser. If any presumption is to be indulged in, it is that he made no such claim, for afterwards and in the same year, the comptroller refunded to Viele the price of other lots, and in successive years the residue, as above stated, to Viele or Peck. There is nothing to show that these payments were not made and received in good faith and under the belief on both sides that

Viele and Peck were entitled to them. Their conduct indi-
cates that. On the contrary, Osborn, if he had any rights,
slept upon them so long that he must be deemed to have
acquiesced in the claim of Viele and of Peck, or at least to
have consented by his silence and inaction to the dealings of
the comptroller with them as the lawful assignees of the
purchaser. And although the statute of limitations does not
prevent the issuing of the writ of *mandamus*, the damage and
inconvenience resulting from the lapse of time are to be
considered and the writ should not be granted after the period
fixed as a bar for actions has expired (*People ex rel. Gas
Light Co.* v. *Common Council, supra*), and if, as is claimed
in behalf of the relator, he has no other legal remedy, his
condition in this respect is not improved by that circumstance.
When another remedy exists, the writ will not issue. It may
also, in the discretion of the court, be denied when the delay
in moving it is unreasonable, although it falls short of the
time given for commencing actions, but after that time, when
the delay is unexplained and unaccounted for, it ought not to
be granted. In this case the period of the longest limitation
for bringing an action, was permitted to pass. Upwards of
twenty years from the discovery of the invalidity of the sale
to the relator's purchase. If any right at any time existed in
the relator's assignor, his delay in enforcing it was not only
unreasonable, but to the prejudice of others.

Without adverting to other grounds on which the appellant,
not without reason, relies, we think the relator's claim too
stale to justify the interference of a court in its favor. The
State and its officers are entitled to no less protection than a
private litigant.

The order of the General Term should, therefore, be
reversed and the order of the Special Term affirmed, with
costs.

All concur.

Ordered accordingly.