# FOURTH DEPARTMENT

### AT

# GENERAL TERM,

## September, 1888.

49 | 425
64 | 413

---

THE PEOPLE OF THE STATE OF NEW YORK EX REL.
EGBERT M. GAIGE, RESPONDENT, v. WILLIAM J. REAR-
DON AND WILLIAM H. BULLIS, INSPECTORS OF ELECTION
OF THE SECOND ELECTION DISTRICT OF THE FIFTH WARD OF
THE CITY OF BINGHAMTON, N. Y., APPELLANTS. IMPLEADED
WITH MYRON RAUGHT.

*Board of inspectors of election — it cannot be compelled by mandamus to reconvene
and canvass the votes after a majority of the board have filed a false return with the
clerk of the canvassing board.*

At a charter election for city officers for the city of Binghamton, held on the
14th day of February, 1888, the board of inspectors of election in the second
district of the fifth ward, in said city, consisted of the appellants, together with
one Myron Raught. Upon the closing of the polls the ward ballot-box in which
the ballots for aldermen were deposited was opened before the box containing
the votes cast for the city ticket was opened. The ballots were counted, and
being found to exceed by one the number of votes shown by the poll-list to
have been cast for the office of aldermen, were returned to the box and
one ballot was drawn therefrom. On opening the city box five ward ballots were
found therein, which were by the appellants, against the objection of Myron
Raught, placed in the ward box, together with the one ballot which had been
already drawn therefrom; six ballots were then drawn therefrom, to make the
same conform with the poll-list, and the ballots remaining in the box were
again counted. The appellants, two of the said inspectors, thereupon made a

HUN— VOL. XLIX     54

return of the said ward election, certified to by them, to the city clerk, showing the result of the second counting; their associate, Raught, refusing to join in making the same, insisting that such return was illegal and in violation of the provisions of the election law. This action of the inspectors changed the result of the election.

Upon an appeal from an order of the Special Term granting a peremptory *mandamus*, directed to the appellants and Myron Raught, commanding the said board of inspectors to forthwith reassemble, meet and make, sign and deliver to the city clerk of Binghamton a full, true and correct return of the votes cast for the several candidates for aldermen in said second district, and that, in making such return, they do not take into account or include any action, or the result of any action, taken by them, or any of them, in regard to the ward ballot-box, or the ballots therein contained or placed, after they had opened the city ballot-box of said second district;

*Held*, that as the board of inspectors, upon making and filing its certificate, had fully discharged its official duty, and thereafter became *functus officio* as a board, a writ directed to them would be of no effect, and they could not be compelled by a *mandamus* to reconvene and recanvass the ballots.

That, as to the provisions contained in the writ commanding the board "not to take into account or include any action, or the result of any action, taken by them, or any of them, in regard to the ward ballot-box, or the ballots therein contained or placed after they had opened the city ballot-box," the court found no authority for the exercise of such a power, and was not willing to concede its existence, as it would establish a dangerous precedent in regard to a matter of the utmost importance to the people, and, in a government like ours, one fraught with incalculable mischief.

*Semble*, that the remedy of the relator was by *quo warranto* after the certificate of election had been given to his adversary and the office was in his possession.

APPEAL from an order of a Special Term of the Supreme Court held in the county of Chemung on February 22, 1888, granting a writ of peremptory *mandamus*, directed to the appellants and one Myron Raught, composing the board of inspectors of election of the second election district of the fifth ward in the city of Binghamton, requiring and commanding said board of inspectors to forthwith reassemble, meet and make, sign and deliver to the city clerk of Binghamton a full, true and correct return of the votes cast for the several candidates for aldermen in said second district, and particularly of the votes cast therein for Egbert M. Gaige and Stephen C. Normile for the office of alderman therein at the election held therein on the 14th day of February, 1888; and that in making such return they do not take into account or include any action or the result of any action taken by them or any of them in regard to

the ward ballot-box or the ballots therein contained or placed after they opened the city ballot-box of said second district.

The facts will be found in the opinion.

*Alexander & A. W. Cumming,* for the appellants.

*Winthrop D. Painter* and *Taylor L. Arms,* for the respondent.

KENNEDY, J.:

A charter election for city officers for the city of Binghamton was held on the 14th day of February, 1888, among others, for alderman in the several wards therein. The appellants, William J. Reardon and William H. Bullis, together with one Myron Raught, composed the board of inspectors of the election in the second district of the fifth ward in said city. The relator, Egbert M. Gaige, was one of the candidates for alderman voted for in said ward and one Stephen C. Normile another, running on different tickets.

Upon the closing of the polls at said election the poll-list kept of voters who had voted showed that 483 ballots had been cast for the office of alderman. The ballot-box in which such ballots, as received by the inspectors, were deposited was opened before the box containing the votes cast for the city ticket; and upon the ballots being counted there were found therein 484 ward tickets and eight city ballots. These last were placed apart and by themselves, and the 484 ward ballots returned to said box. The box was well shaken and one ballot drawn therefrom under the direction of said board, and the same was delivered to a member thereof and by him preserved. The ballots remaining in said box were then recounted and found to be 483, or the number corresponding to said poll-list. Of these 273 were found to be for Stephen C. Normile, and 195 for Egbert M. Gaige, and one Harris received fourteen. The 483 ballots were then returned to the box, it was sealed, and said board then proceeded with the city box; and there were found therein five ward ballots. The poll-list called for 489 city ballots. Upon being counted there were found in said city box only 474 city ballots. Thereupon the eight city ballots found in the ward box were placed in the city box with the others, and from the whole number three were drawn, and those remaining were counted and found to be 479 and to correspond with the poll-list.

Thereupon the appellants, against the objection of their associate on the board, Myron Raught, placed the five ward ballots found in the city box, together with the one which had been drawn therefrom, in said ward box, and drew therefrom six ballots, reducing the number from 489 to 483 to make the same again conform to the poll-list. The ward ballots remaining in the box were again counted, and it was found that of these Stephen C. Normile received 275 and Egbert M. Gaige 192, and Harris received fifteen. The appellants, two of said inspectors, thereupon made a return of said ward election, certified to by them, to the city clerk, showing the above result in said district. Their associate, Raught, refused to join them in making the same, insisting that such return was illegal and in violation of the provisions of the election law. The action of the inspectors changed the result of the election. By the poll-list and the original counting making the same conform thereto, Egbert M. Gaige, the relator, was shown elected as alderman in said ward. By the change made and the last count Stephen C. Normile was shown to be elected   The relator applied for and the court at Special Term granted a peremptory *mandamus* of the nature and containing the mandatory requirements before stated.

By section 294 of the Election Code of the State, compiled and published under the direction of Joseph B. Carr, secretary of state, 1885, it is provided : " Each box being opened, the ballots contained therein shall be taken out and counted unopened except so far as to ascertain that each ballot is single ; and if two or more ballots be found so folded together as to present the appearance of a single ballot, they shall be destroyed, if the whole number of ballots exceed the whole number of votes, and not otherwise." (See, also, § 716.)

" Section 295. No ballot properly indorsed found in a box different from that designated by its indorsement shall be rejected, but shall be counted in the same manner as if found in the box designated by such indorsement, provided that by the counting of such ballot or ballots it shall not produce an excess of votes over the number of voters as designated on the poll-list."

The whole number of persons voting for alderman, as designated on the poll-list, was 483. There was an excess of one vote in the ward box over the list, there being 484 votes in the box. When this was discovered one ballot was drawn from the box and the

number made to conform to the poll-list. Afterwards and upon discovering the five ward ballots in the city box, these with the one that had been drawn from it were put into the ward box, making the number therein 489, and then six were drawn out to make the number conform to the number of votes as designated on the poll-list. This action by the inspectors was in violation of the provisions before quoted, and therefore illegal. The course adopted did not serve to show the correct result of the vote for alderman. But 483 ballots were cast as shown by the poll-list; 484 were in the box, and in drawing a ballot therefrom the proper action was taken (Election Code § 296), and the remaining 483 votes should have been counted, and the return of the inspectors should have conformed thereto. By placing the five ward ballots found in the city box in the ward box, that number of votes which the poll-list showed had not been voted was wrongfully added to those in the ward box, because there was no evidence that they had been voted. The only satisfactory way they could be accounted for in the city box is that they were folded and wrongfully deposited with a city ballot.

It seems quite evident, therefore, that the return made by the appellants to the city clerk was illegal, in that it did not show the true result of the ballot. Assuming this to be so, the contention by the appellants is that the remedy by the party to correct the error is not by *mandamus*; that this writ is only allowed when there has been a refusal by the inferior officer or tribunal to act, and simply to compel action. Where action has been had, although erroneous, it is urged that another and appropriate remedy may be resorted to. This claim by the appellants is doubtless tenable where the person claimed to have been elected illegally is actually in possession of the office under a *bona fide* claim and an election that is not merely colorable. In such a case the question of the claimant's right cannot be tried by *mandamus*. If another claims the office on the ground that he had a majority of the legal votes, he must procure a *quo warranto* to oust the actual occupant before he can obtain a *mandamus* to force his own admission. (Dillon on Munic. Corp., § 842-844, 892.)

In the case of the *People ex rel. Cuthbert* v. *Common Council of Detroit* (18 Mich., 338) it is held that a *mandamus* would not be granted to compel the city council to count a vote and declare

the claimant elected to the office as claimed.    A wrongful counting
of votes, followed by a declaration of the person so elected, is not
ground for a *mandamus*.    (Short on Information, etc., 292.)
Assuming, then, that a *mandamus* is not the proper remedy when
the office is filled, the rule is not applicable to this case, because
there has been no canvass of the ballots or certificate of election to
either of the persons voted for, and the office is not filled *de facto*,
the city canvassers not having canvassed the vote as returned by the
inspectors.

It is further contended by the appellant that the inspectors having
acted in counting the ballots, and having declared the result of the
election and made and filed their certificate, although they may
have, by mistake or purposely, acted illegally, that a *mandamus* is
not a proper remedy to correct the error, whether the office is filled
or not.    The board of inspectors, upon the closing of the poll, pro-
ceeded to count the ballots cast for alderman, and concluded such
count in the manner before stated, and a majority made and signed
and filed with the city clerk the result as found by them.    This action,
on their part, was judicial in its nature.    A writ of *mandamus*
does not lie to compel an officer, exercising judicial functions, to
make any particular decision or to set aside a decision already made.
(*People ex rel. Millard* v. *Chapin, Comptroller*, 104 N. Y., 96.)
The writ in this case not only required them to reconsider and, in
effect, to set aside the decision already made by them, but commands
them "not to take into account or include any action, or the result
of any action taken by them in regard to the ward ballot-box or the
ballots therein contained or placed after they opened the city box."
If this court can command the inspectors how to act in counting
the ballots after they have once acted, it arrogates to itself the power
to control the result of an election.    We find no authority for the
exercise of such power, nor are we willing to concede its existence.
To yield it, as it seems to us, is to establish a dangerous precedent
in regard to a matter of the utmost importance to the people, and, in
a government like ours, one fraught with incalculable mischief.

The board of inspectors, upon making and filing its certificate,
had fully discharged its official duty, and, therefore, became *functus
officio* as a board.    A writ directed to them would be of no effect,
since they could not legally again convene as a body and undo the

acts done at a prior time and when in the proper discharge of official duty. (*People ex rel. Bailey* v. *Supervisors of Greene* (12 Barb., 217; 15 id., 607.) A majority of the board of inspectors having made a return with a certificate of the result of the election, and filed the same with the city clerk, it is now in the hands of the city canvassers, and the matter has passed from the control of the inspectors. Until this return and certificate are returned to them, it is not quite apparent how they can again act upon the question, even if it be conceded that they still have official existence and the power to do so in any case, unless this is done in the first instance, and the commands of the writ should be complied with, the city board of canvassers will have two returns showing different results, either of which, for all that appears, might be adopted as the basis of their certificate of election and the error complained of stand uncorrected.

In the case of the *People ex rel. Sanderson* v. *Board of Canvassers of Greene County* (12 Abb. N. C., 96), the inspectors of election had made their return to the board of county canvassers, and an application was made for a writ addressed to the latter, requiring them to return to the former the certificate and return they had so made. After the granting of the writ a second one was applied for and granted, commanding the town inspectors to make a corrected or amended return. This action was taken upon the ground and because, until the return which had been made was restored to the inspectors, the matter had passed beyond their control and they had no power for further action.

We cannot yield to the argument of the learned judge in the Sanderson case, that when an inferior tribunal has assumed to act, and by mistake or otherwise has acted irregularly, it may be treated as not having acted at all, and that the error committed may be remedied through the instrumentality of a writ of *mandamus*. It seems to us more in harmony with the prerogatives of the writ, if it shall be confined to its legitimate use of compelling inferior officers to act in case of refusal, and not extended and made available to correct alleged errors in proceedings by them already had.

In our judgment, the proper course to adopt is for the city canvassers to canvass the vote as returned by the majority of the inspectors, and if they refuse to do so, this court will compel them

by *mandamus.* Having done this and granted the proper certificate of election, when the party who is thereby shown elected shall fill the office, a *quo warranto* is the proper remedy to determine whether he has been duly elected. If upon the hearing it shall be adjudged that the claimant is entitled to the office, a *mandamus,* if necessary, will be allowed to compel his restoration to it. If right in the above, it follows that the order appealed from should be reversed.

HARDIN, P. J., concurred.

FOLLETT, J.:

I concur in the result, upon the sole ground that the terms of office of the inspectors having expired, they cannot be compelled by *mandamus* to reconvene and recanvass the ballots. (*The Secretary* v. *McGarrahan,* 9 Wall., 298; *United States* v. *Boutwell,* 17 id., 604; *State* v. *Elkinton,* 30 N. J. L., 335.) The inspectors who were elected to succeed the defendants are without power to recanvass the ballots. (*Hadley* v. *Mayor,* 33 N. Y., 603.) A *mandamus* would be unavailing. A remedy for such cases should be provided by statute. The canvass made by the defendants was plainly in violation of the statute, which was read to them at the time, and they are not entitled to costs.

The judgment should be reversed, without costs.

Order reversed, without costs.