PEOPLE *ex rel.* HALL *v.* VILLAGE OF LITTLE FALLS.[1]

(*Supreme Court, Special Term, Herkimer County.* July 2, 1889.)

OFFICE AND OFFICER—CIVIL SERVICE LAW—MANDAMUS.
　　Under Laws N. Y. 1887, c. 464, which provides that "honorably discharged Union soldiers and sailors shall be preferred for appointment and employment, * * * provided they possess the business capacity necessary to discharge the duties of the position involved," it is the duty of the trustees of a village to determine whether

[1]Affirmed on appeal, see *post,* 960.

an applicant for the position of village attorney, who is an honorably discharged Union soldier, is also fit, competent, and of sufficient business capacity to perform the duties of the position; and such determination, being judicial, cannot be reviewed by *mandamus.*

Application by the people, on the relation of H. Clay Hall, for a peremptory writ of *mandamus,* requiring the president, etc., of the village of Little Falls, to appoint relator attorney of the village. The village is incorporated. There are eight trustees, besides a president. The trustees are given power by the charter, (section 30, subd. 12) to employ attorneys, and it is provided by section 73 of the by-laws that the village attorney shall act for the village in its legal matters. No particular office seems to be created known as the office of "village attorney," but the person employed by the trustees is called "village attorney." This application is based upon the ground that the relator is an honorably discharged Union soldier, and as such is entitled to the appointment, under the provisions of chapter 464, Laws 1887. There were several applicants for the position, none of whom were such discharged soldiers except the relator. He was concededly such. The trustees appointed one of the other applicants, refusing to appoint the relator. The court is thereupon asked to interfere, and by writ of *mandamus* compel the appointment and employment of the relator. The claim made by the defendants is that they had the right and the duty to determine whether the relator was fit and qualified for the position, and that they in good faith considered the matter, investigated and examined the question, and determined it adversely to the relator, and that the court has no power to review or interfere with such determination. Other claims are made in opposition to this application, which I do not deem it necessary to consider.

H. Clay Hall, for relator. E. J. Coffeen and A. M. Mills, for defendants.

WILLIAMS, J. The statute under which this application is made provides that "honorably discharged Union soldiers and sailors shall be preferred for appointment and employment;" and that "age, loss of limb, or other physical impairments which do not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties of the position involved." The statute, it will be seen, does not provide the person appointed or employed shall be such discharged soldier. The intention of the statute was not to compel the appointment of, but merely to give a preference in such appointment to, such discharged soldiers. It is not necessary to trust to implication, because the statute, in express terms, recognizes the principle that the applicant must be competent to perform the duties of the office, as well as be an honorably discharged Union soldier. The trustees, in this instance, had other duties to perform, in connection with the selection of a village attorney, besides merely satisfying themselves he was such discharged soldier. The position was an important one. The person selected needed to have at least fair legal attainments, to be strictly honest, and to have peculiarly good common sense and judgment. All these things would, as to this position, go to make up what the statute designates as "business capacity necessary to discharge the duties of the position involved." The village might suffer very largely, in damages and costs, if the selection of a proper and competent person was not made for this position. The duty of making such a selection is imposed upon the trustees of the village, and not upon the court. They have made the selection, and now it is claimed the court should review their decision, and should determine whether they have acted honestly or wisely, or as they should have done. Moreover, the court is asked to set aside their decision, and compel them to perform this duty in a particular way,—that is, by discharging the person appointed and employed as village attorney, and appointing and employing the relator. I do not think the court has any such power. The performance of the duty of determining as

to the competency and capacity of the relator for the position was intrusted to the village trustees, and the writ of *mandamus* will not lie to review or reverse their decision, or to require it to be in any particular direction. In *Howland* v. *Eldredge*, 43 N. Y. 457, where it was sought by *mandamus* to compel the assessors to make affidavit that a majority of tax-payers, etc., had consented to the issue of bonds for railroad purposes, it was held that the court might, by *mandamus*, compel the assessors to proceed to act, and if, from their determination, the requisite consents were found to have been given, then to make the affidavit, but could not compel them to determine in any particular way, and make an affidavit according to such enforced determination. The court say the universal rule in respect to all subordinate courts and tribunals clothed with the exercise of judgment or discretion is that they may, by *mandamus*, be compelled to proceed and determine the matter, but cannot be compelled to decide in any particular way. If they could, it would no longer be their judgment or discretion, but that of the court awarding the writ. In *People* v. *Common Council*, 78 N. Y. 33, where it was sought to compel the defendant to designate the Troy Daily Times as official paper of the city, the charter making it the duty of the defendant to designate newspapers having the largest circulation in the city, it was held the power vested in defendant was discretionary, and the writ of *mandamus* could not be used to review that determination, or compel the determination in a particular direction. The court say: "The office of the writ of *mandamus* is, in general, to compel the performance of mere ministerial acts prescribed by law. It may also be addressed to subordinate judicial tribunals, to compel them to exercise their functions, but never to require them to decide in a particular manner. It is not, like a writ of error or appeal, a remedy for erroneous decisions. * * * This principle applies to every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power or discretion, irrespective of the general character of the officer or body to which the writ is addressed. A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment. The character of the duty, and not that of the body or officer, determines how far performance of the duty may be enforced by *mandamus*. Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and, though it can be compelled by *mandamus* to determine the fact, it cannot be directed to decide it in a particular way, however clearly it be made to appear what the decision ought to be." In *People* v. *Chapin*, 103 N. Y. 635, 8 N. E. Rep. 368, and in *People* v. *Same*, 104 N. Y. 96, 10 N. E. Rep. 141, where it was sought to compel the comptroller, by *mandamus*, to act in a particular way, it was held he acted upon evidence before him, determined facts, that he acted judicially, and the writ could not be used against him. The court in the latter case say: "The sufficiency of that evidence is not to be reviewed by *mandamus*, nor can the decision of the comptroller, even if wrong, be so rectified. He exercised a jurisdiction which the law intrusted to him. The result complained of was a judicial determination, and the writ does not lie to compel an officer, exercising such functions, to reach any particular decision, or set aside a decision already made." Other cases might be referred to, but these are sufficient to indicate clearly what the law is relating to the office of the writ of *mandamus*, and, under the law as thus laid down, it is quite clear this writ cannot issue for the purpose it is here applied for. There would seem to be no doubt, under the statute in question, that a person, to entitle him to an appointment or employment, must be not only an honorably discharged Union soldier, but also fit, competent, and of sufficient business capacity to perform the duties of the position, and whether the relator possessed these qualifications it was the duty of the trustees to determine; such determination is judicial, and cannot be reviewed, reversed, or directed by *manda-*

*mus.* The application will therefore be denied, with $10 costs of motion. Counsel for defendants will prepare the formal order, submit it to counsel for relator for approval as to form, and to me for signature.