## PROPRIETORS OF KENNEBUNK TOLL BRIDGE, *Petitioners for Mandamus.*

The acceptance, or rejection, by County Commissioners, of the report of a committee appointed by said Commissioners pursuant to the laws of this State and the agreement of the persons interested, to ascertain the amount of damages caused by the laying out of a highway, was held to be a *judicial,* and not a *ministerial* act — and therefore, an application for a writ of *mandamus* to compel the Commissioners to *accept* such report, was denied.

THIS was a petition for *mandamus* to the York County Commissioners, to compel them to accept the report of a committee appointed to estimate the damages in the location of a road.

By the certified proceedings of the Commissioners, it appeared that a County road was laid out over the property of the petitioners in the year 1831, of which a return was made and accepted at a regular session of the County Commissioners, on the 2d Tuesday of October, of the same year, and that the sum of $100, as damages, was allowed to said Proprietors. That said Proprietors were dissatisfied with the allowance made them, and at the *May* session, 1832, petitioned for the appointment of a committee to estimate the damages anew — and *Timothy Shaw, Archibald Smith, Jr.* and *Moses Hubbard* were appointed such committee by agreement of said Proprietors and the County Attorney. On the 2d Tuesday of *October,* 1832, two of said committee reported in the premises, *Shaw* dissenting, allowing as damages to the Proprietors, the sum of $200. This report the Commissioners refused to accept, for the following reasons, which were entered of record:

1. "Because the Proprietors of said Toll Bridge relinquished all right to said bridge and its privilege and appurtenances to the towns of *Kennebunk* and *Kennebunkport* in consideration that the highway aforesaid should be located across said bridge — and in consideration of $100 awarded them by said Commissioners, to be paid by the County aforesaid, agreed with said Commissioners to accept that sum in full of all damages sustained by them the said Proprietors, on account of the location of said highway."

2. "Because if said Proprietors are entitled to any increase of damages, the sum awarded them by said Committee was *excessive.*"

3. "Because the Committee aforesaid were not all agreed on said report, two only signing it, and assenting thereto — the other dissenting, and assigning his reasons therefor."

To compel the Commissioners to accept this report, the present application for a *mandamus* was made.

*Bourne,* for the petitioners.

1. The report of the committee was valid though signed by two only. Whenever a committee is appointed by law, or by the Court, or is of a public character, it may act by a majority. *Grinley* v. *Barker,* 1 *Bos. & Pul.* 229; *Rex* v. *Beeston,* 3 *T. R.* 593; 8 *East,* 319; *Orbis* v. *Thompson,* 1 *Johns.* 500; *Green* v. *Miller,* 6 *Johns.* 39; 1 *Cowen's Rep.* 138; *Barret* v. *Porter,* 14 *Mass.* 143; *Maine stat. ch.* 118.

2. The duty of the Commissioners to accept the report of the committee was imperative — it was not discretionary with them — see *statute, ch.* 500.

The nature of their powers is the same with that of the old Courts of Session — and they were held to be mere *ministerial* officers. *Commonwealth* v. *Balkam,* 3 *Pick.* 281; *Wilbraham* v. *County Com. of Hampden,* 11 *Pick.* 322; 5 *Johns.* 282; *Danvers* v. *Essex County Com.* 6 *Pick.* 20.

3. The Commissioners had no right to reject the report on the ground that the damages were excessive. Or if they had, they should have been bound by the evidence before them, and not by the results of their own previous personal examination. *The People* v. *The Sessions of Shenango, Caines' Cas. in Error,* 319.

*Howard*, County Attorney, resisted the argument for the Petitioners, and cited, *Commonwealth* v. *Justices of the Court of Sessions for Norfolk*, 5 *Mass.* 435 ; *Grinley* v. *Barker & al.* 1 *Bos. & Pul.* 229 ; *Cook* v. *Lovelander & al.* 2 *Bos. & Pul.* 31 ; *Green* v. *Johnson*, 6 *Johns.* 39 ; *Towne* v. *Jaquith*, 6 *Mass.* 46 ; 5 *Com. Dig.* title *Mandamus A.* 3 *Blk. Com.* 110.

MELLEN C. J. at the term held in *Cumberland*, by adjournment in *August* following, delivered the opinion of the Court.

This is an application to this Court for a mandamus to the *York County Commissioners*, to compel them to accept the report of a certain committee which had been agreed upon by the said proprietors and the agent of the town of *Kennebunk*, pursuant to the first section of *chapter* 118, of the revised statutes, to estimate the damages sustained by said proprietors by the laying out of a highway in said town over their land ; which report the said Commissioners, on presentment of it for acceptance, refused to accept, for reasons by them assigned, and appearing on the certified proceedings of the Commissioners now before us.   The 4th section of the act above mentioned requires that the return or report of such committee shall be made under their hands and seals, to the Commissioners, and be by them *accepted* and recorded.   The validity and legal effect of the report depend on the *acceptance* of it ; of course, we must presume that it was never intended that such *acceptance* should be the necessary consequence of its *presentment* for that purpose ; for, if so, it could be of no use ; but that they should exercise a sound discretion of a judicial character in deciding on the question of acceptance, as the Court of Common Pleas do on deciding on the question of acceptance of a report of referees.   In such cases the law requires an acceptance, and in the same language as is used in the 4th section before mentioned.   The very idea of a power to *accept* a report seems to imply a power to *refuse to accept* it, if circumstances render an acceptance improper.   Such a power ought to reside somewhere.   Suppose that the committee, in such a case as the present, could be proved to have acted *corruptly* in forming their report, or to have committed a gross *mistake*, must the Commissioners, at all events, accept the report, contrary to

truth, justice, and the plain dictates of common honesty? We think not. In the case of *Chase & al.* v. *Blackstone Canal Company*, 10 *Mass.* 244; which was an application for a mandamus to the County Commissioners, to award costs to them in a case between the petitioners and the Company, the Court say, "This writ lies either to compel the performance of *ministerial* acts, or is addressed to subordinate judicial tribunals, requiring them to exercise their functions, and render *some* judgment in cases before them, when otherwise there would be a failure of justice from a delay or refusal to act; but when the act to be done is *judicial* or *discretionary*, this Court will not direct what decision shall be made." The Supreme Court of the United States, in the case of *U. States* v. *Lawrence*, 3 *Dallas*, 42, held, "that they had no power to require a Judge to decide according to the dictates of any judgment but his own; that as the District Judge, in the case before him, in refusing to issue a warrant, had acted in a judicial capacity, they could not interfere to control or reverse his decision." See also *Comyn's Dig.* "*mandamus*" *A*, 8 *East*, 213; 2 *Johns. Cases*, 72; 5 *Binney*, 87; 3 *Binney*, 275; 5 *Binney*, 537; 2 *Esp. Dig.* 668. We think these authorities are applicable, as we cannot view the acceptance or nonacceptance of such a report as a *ministerial act*. The Commissioners thought it was not, and after a hearing of the parties, decided not to accept the same, and, being requested, gave their reasons in writing. We forbear entering into an examination of those reasons, because we are satisfied that a mandamus ought not to be granted.

*Writ denied.*