SARAH H. FURBISH, Petr. for Mandamus,

*vs.*

COUNTY COMMISSIONERS.

SAME, AND WILLARD B. ARNOLD, Petrs. for Mandamus,

*vs.*

SAME.

Kennebec.　　Opinion June 23, 1899.

*Eminent Domain.　Damages.　Vested Rights.　Mandamus.　Statutes.　Priv. and Spec. Laws, 1881, c. 141; 1887, c. 59; Stat. 1881, c. 53, § 7; R. S., 1871, c. 78, §§ 7, 15; R. S. 1883, c. 1, § 6, par. XXVI; c. 18, §§ 7, 10; c. 78, § 18.*

When a private or special act of the legislature adopts and incorporates by reference the provisions of an existing general statute, such provisions of the general statute become a part of the special statute as if they were written into the special act; and they are not affected by subsequent amendments or repeal of the general statute.

This court has authority by its writ of mandamus to compel county commissioners to issue a warrant of distress to enforce payment of damages awarded by them for land and rights taken by water companies.

The Maine Water Company is the successor of the Waterville Water Company and has the same rights and is subject to the same liabilities as that company under its charter, and which was authorized to take and hold by purchase or otherwise any land or real estate necessary for its purposes; and damages for such taking, when the person sustaining damages and the company do

not mutually agree upon the sum to be paid therefor, are to be ascertained in the same manner and under the same conditions, restrictions and limitations as are by law prescribed in case of damages by the laying out of highways.

October 14, 1896, the directors of the Maine Water Company voted to take for its purposes certain real estate and water rights of the petitioners and on the 17th of the same month filed in the office of the county commissioners for Kennebec County a plan and description of the land and rights so taken; and on the 19th of the same month made application to the county commissioners to estimate and award damages therefor. After notice and hearing the commissioners made an award of damages to be paid by the company to the petitioners. After the time in which an appeal might have been taken from such award, the company executed and delivered to each of the petitioners notices of abandonment of the property so taken. July 6, 1897, after the time for taking an appeal from the award of the commissioners had expired, the petitioners filed with the commissioners a motion for a warrant of distress against the company and its property to enforce payment of the damages awarded, which motions were denied; whereupon the petitioners, on the 6th day of October, 1897, filed petitions for writ of mandamus in this court below to compel the county commissioners to issue such warrants. *Held :*

1. That when the award of damages had been finally adjudicated, the petitioners had a vested right to the damages awarded.

2. That the damages were assessable in the manner prescribed for assessment of damages in case of laying out a highway by the statutes in force at the date of the charter.

3. That after the damages had been finally adjudicated by the county commissioners, the water company could not avoid payment of such damages by an abandonment, or attempted abandonment of the property taken.

4. That the county commissioners were authorized, and it was their duty, to issue a warrant of distress to enforce payment of the damages awarded by them.

5. That this court has authority by its writ of mandamus to compel the county commissioners to issue such warrant.

ON REPORT.

These two cases, heard together and depending on the same facts, were petitions for mandamus. The Maine Water Company, the party in interest, assumed the defense of both actions. By agreement of the parties the cases were reported to the law court for argument and determination,—the petitions to be taken as the alternative writs and returns thereto.

The cases appear in the opinion.

*S. S. & F. E. Brown; O. D. Baker and F. L. Staples,* for plaintiffs.

Where mandamus is the only process which will yield to the party the precise remedy which the statute has given him, and where the act is not discretionary, and the debt is plain, then mandamus will lie to restore to the party the specific remedy which the statute has given him. If the statute gives him two remedies he is entitled to his option between them, and if he is deprived of either, he is deprived of the very thing which the statute has given him. There is no possible way of restoring him to the position in which the statute has left him, except in the last resort by mandamus. In such a case, mandamus, we submit, is the only effectual remedy for restoring to the party the very right or option which the statute has expressly given. *Adams* v. *Ulmer,* 91 Maine, 47; *Post Master General* v. *Trigg,* 11 Pet. 173.

*E. F. Webb; H. M. Heath and C. L. Andrews,* for Maine Water Company.

The Water Company is entitled to make answer and to stand as the real parties. R. S., c. 102, § 18.

The writ of mandamus is a prerogative writ, granted at discretion and not of right. *Woodman* v. *Co. Com.* 24 Maine, 151; *Davis* v. *Co. Com.* 63 Maine, 396; *Baker* v. *Johnson,* 41 Maine, p. 20; *Townes* v. *Nichols,* 73 Maine, 517.

"A party for whose benefit a judgment is rendered by them (county commissioners) may recover the amount in an action of debt founded upon such judgment." R. S., c. 78, § 19.

The petition does not allege facts sufficient, if proved, to authorize a writ of mandamus. *Hoxie* v. *Co. Com.* 25 Maine, 333. There is no averment in the petition of the time within which the damages awarded were to be paid, after the proceedings were closed. *Davis, ex parte,* 41 Maine, 39.

It was within the judicial discretion of the county commissioners to issue or decline to issue the warrant of distress. R. S., c. 78, § 18; *Davis* v. *Co. Com.* 63 Maine, 398.

If the rights claimed by the petitioners are doubtful, or involve

the necessity of litigation to settle them, the mandamus will not be granted. *Townes* v. *Nichols*, supra. The court does not know what the rights of the parties are in relation to the use of water in the stream, and those rights cannot be investigated or determined in these proceedings.

Right of revocation: Counsel cited and commented upon *Kimball* v. *Rockland*, 71 Maine, 157; *Perkins* v. *Me. Cent. R. R. Co.*, 72 Maine, 95; *Riche* v. *Bar Harbor Water Co.*, 75 Maine, 91; *New Bedford* v. *Co. Com.* 9 Gray, 348. Until actual payment of the compensation or until the company has actually entered into possession of the land, the land owner acquires no vested interest in the damages assessed and the company may abandon it at any time prior thereto; and the right of abandonment is not lost unless the company reduces the land to possession and constructs its public improvements thereon or allows some private rights to attach which would be prejudiced by the abandonment. *Denver & N. O. R. R. Co* v. *Lamborn*, 8 Colo. 389; S. C. 23 Am. and Eng. R. R. Cas. 115; *Peoria & R. I. R. R. Co.* v. *Rice*, 75 Ill. 329; *P. M. R. R.* v. *Sater*, 1 Iowa, 421; *Black* v. *Baltimore*, 50 Md. 235; *N. M. R. R.* v. *Lackland*, 25 Mo. 515; *State* v. *C. I. R. R.* 17 Ohio St. 103; *Stacy* v. *Vt. C. R. R. Co.*, 27 Vt. 39; 2 Dillon Mun. Corp. (3rd Ed.) § 609, and cases. The old rule that a land owner has a vested right in the damages is not the law of to-day. The existing statute changes the rules laid down in *Kimball* v. *Rockland*, supra, and similar cases. *Riley* v. *City of Lowell*, 117 Mass. 76; *Custy* v. *Lowell*, 117 Mass. 78; *Perrysburgh Canal Co.* v. *Fitzgerald*, 10 Ohio St. 513; *Kugler's Appeal*, 55 Pa. St. 123; *Chandler* v. *Jamaica Pond Aqueduct Corp.*, 125 Mass. 544; *Emerson* v. *Western Union R. R. Co.*, 75 Ill. 176; *Baldwin* v. *City of Newark*, 38 N. J. L. 158; *Durham R. R. Co.* v. *Railroad Co.*, 106 No. Car. 16; *Hamor* v. *Bar Harbor Water Co.*, 78 Maine, 127; *In re Vernon Park*, 163 Pa. St. 70; Endlich, Statutes, p. 696, § 493.

A proceeding to condemn real estate for public use may be abandoned, even after the damages are assessed, if before the payment thereof or deposit for the owner, when the property has

remained unmolested; and no execution can be awarded for the collection of the sum so assessed; and the court will not compel the payment of the compensation even by mandamus.    *City of Chicago* v. *Barbain*, 80 Ill. p. 482.

Under legislative power to take by condemnation, at a price to be fixed by another body, as commissioners or a jury, the party has an election whether to pursue or abandon the condemnation, after the price is fixed, unless a contrary legislative intent is clearly indicated.    *State* v. *Halsted*, N. Y. L. 640, U. S. Digest, A. D. 1879, p. 134, No. VII.

Whenever land is sought to be taken for a public purpose, the public authorities, in the absence of any satisfactory provision to the contrary, have a reasonable time, after ascertaining the expense of the scheme, to decide whether to accept or refuse the land at the fixed price.    *O'Neil* v. *Hudson County Freeholders*, 41 N. J. L. 161.

Affirming: *Maborn* v. *Halsted*, 39 N. J. L. 640; *Kennedy* v. *Indianapolis*, 103 U. S. 599.

County commissioners no authority to issue warrants in any event: *Russell Mills* v. *Co. Com.* 16 Gray, 347; *Bigelow* v. *Turnpike*, 7 Mass. 202: *Jeffrey* v. *Turnpike*, 10 Mass. 368.

SITTING: EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, FOGLER, JJ.

FOGLER, J.    Petitions for mandamus in which the petitioners pray that a writ of mandamus issue to the county commissioners of Kennebec County commanding them to issue warrants of distress against the Maine Water Company and its property to enforce payment of the sums awarded by the commissioners to the petitioners respectively for real estate taken by the company as for public use.    The Water Company comes in as a defendant in interest. The cases were heard together, the rights of the respective parties depending upon the same facts.

The Maine Water Company is the successor of the Waterville Water Company and has the same rights and is subject to the

same liabilities as that company. The last named company was chartered by ch. 141, Private and Special Laws of 1881, which was approved March 16, 1881. By § 3 of said act it was authorized " to take and hold by purchase or otherwise any land or real estate necessary for erecting and maintaining dams and reservoirs, and for laying and maintaining aqueducts for conducting, discharging, distributing and disposing of water, and for forming reservoirs therefor." Section 4 provides that the company shall be liable to pay all damages that shall be sustained by any person or corporation in their property by the taking of any lands or mill privileges, or by flowage, or excavating through any land for the purpose of laying down pipes, building dams, or constructing reservoirs; "and if any person sustaining damages, as aforesaid, shall not mutually agree upon the sum to be paid therefor, such person may cause his damages to be ascertained in the same manner and under the same conditions, restrictions and limitations as are by law prescribed in case of damages by the laying out of highways." By an amendment to its charter, chapter 59, Private and Special Laws of 1887, the Company was authorized to take and hold sufficient water of the Messalonskee Stream, so called, in the towns of Waterville and Oakland. In 1896, the respondent, the Maine Water Company, successor to the Waterville Water Company, owned and occupied, as a pumping station, certain lands situate on the westerly side of the Messalonskee Stream in Waterville, and possessed certain rights in the waters of the stream; and the petitioners were then the owners of certain lands, mills, machinery and other property connected therewith situate in Waterville on the easterly side of the same stream, and possessed also certain rights in the waters of the stream.

August 18, 1896, the petitioner, Sarah H. Furbish, filed in the Supreme Judicial Court in Kennebec County a bill in equity against the Maine Water Company in which she alleged that the Company was then, and for a long time, had been using a larger quantity of the water of the stream than it was entitled to by right and, thereby had diverted and was then diverting from her mill a large quantity of water to the use of which she was entitled; and

prayed that the company be temporarily and perpetually enjoined
from further diverting the water of the stream to her injury.   A
hearing on the prayer for temporary injunction was appointed on
September 8, 1897.

October 14, 1896, at a special meeting of the directors of the
water company, legally called, it was voted, "That whereas the
company is authorized by its charter to take and hold sufficient
water of the Messalonskee Stream, so called, in the city of Water-
ville, for supplying the inhabitants of the said city of Waterville,
the towns of Winslow and Benton, in said county of Kennebec,
and the town of Fairfield, in the county of Somerset, with pure
water for domestic, manufacturing and municipal purposes, includ-
ing the extinguishing of fires and sprinkling of streets; and
whereas the reasonable accommodation of the appropriate business
of the Maine Water Company, makes it necessary that the said
Company shall take and hold, as for public use, for the purposes
aforesaid, the following described real estate, mill privilege, dams,
penstocks, water and water power, situate in said Waterville on
the Messalonskee Stream at Crommett's Mills, so called, and
bounded as follows: [Here follows description of the property
described in the petitions for mandamus.] "Therefore, on motion,
it was voted:   To take the above described real estate and other
property, for the above described uses and purposes of said com-
pany; and to file in the office of the county commissioners in the
county of Kennebec, where said land and other property is situated
the plans and descriptions of all such lands and other property so
taken; and that the president of the company be authorized to
execute, for and in behalf of the company, all papers necessary for
the taking of said real estate and other property as above."   The
title to the property described in the foregoing vote was in these
petitioners.   October 17, 1896, the company filed in the office of
the county commissioners a plan and description of the real estate
and other property mentioned in said vote, alleging that the prop-
erty and lands were taken and were necessary for its purposes,
October 19, 1896, the company made application to the county
commissioners for an estimation of damages which the company

should pay by reason of taking the property taken as aforesaid. Upon such application the county commissioners, after notice and hearing, made and filed at their December term, 1896, the following report, signed by them.

"AWARD OF COUNTY COMMISSIONERS.

County Commissioners Court,                    Dec. Term, 1896.

31st day of Dec. A. D. 1896.

Maine Water Company, Petitioners, vs. W. B. Arnold and Sarah H. Furbish.

"We make no determination upon the question as to the necessity for taking the land and privileges described in said petition. We estimate the damages which the petitioners shall pay to Sarah H. Furbish for the taking of the first parcel of land described in said petition at seven thousand five hundred dollars without costs. We estimate the damages that the petitioners shall pay to Sarah H. Furbish and Willard B. Arnold for the taking of the second parcel of land described in said petition at two hundred and fifty dollars without costs."

"From this report no appeal was taken and at the April term of the Commissioners Court, being the next term after the filing of the report, their report was accepted and the proceedings closed. April 26, 1897, the petitioners in the case at bar, by their counsel, requested payment of the damages awarded by a letter addressed to the president of the company. At a special meeting of the directors of the company, legally called, it was voted, " To rescind the vote of the directors of this company passed October 14, 1896, whereby it was voted to take and hold, as for public use, and for the purposes of this company, certain water, water power and mill rights in Waterville," etc., and "that Weston Lewis, President of this company, be authorized to execute to said Sarah H. Furbish and Willard B. Arnold a notice of abandonment and surrender of all our rights to said premises, if any, under and by virtue of said vote." In pursuance of such vote, on the 6th day of May, 1897, an instrument of the tenor following was executed, caused to be recorded and delivered to the petitioner, Sarah H. Furbish."

"NOTICE OF ABANDONMENT AND SURRENDER.

" To Sarah H. Furbish of Waterville, in the County of Kennebec and State of Maine:

" Whereas, the Maine Water Company, a corporation established by law and having its place of business at Waterville, in said county, on the seventeenth day of October, A. D. 1896, filed in the office of the County Commissioners of Kennebec County a plan and description of certain real estate, mill privileges, dam, penstocks, water power and water, situated in said Waterville, with a view of taking the same for the purposes of said corporation as for public use. Said premises being described as follows : Commencing at an old iron bolt set in the ledge in cast bank of the Messalonskee Stream on the dividing line between the old grist mill lot and the old fulling mill lot; thence south 41 deg. 23 min. cast 61 5-10 feet to a granite monument in the westerly line of the Pearson tannery road; thence north 48 deg. 7 min. cast 77 83-100 feet to a granite monument set in the easterly line of said Pearson tannery road; thence northerly 62 deg. 23 min. west 65 17-100 feet to an old iron bolt set in the ledge; thence westerly in the same direction to the center of said Messalonskee stream; thence down the center of said stream to a point which shall be opposite or coincident with the first line mentioned in this description; thence southerly 41 deg. 23 min. east to the point begun at.

" And whereas, said Maine Water Company has never entered upon said premises or taken possession thereof.

" Now therefore, know all men by these presents, and you will take notice, that said Maine Water Company hereby abandons, surrenders and yields up to you all its rights, title and interest, if any, in said premises; and hereby notifies you of its intention not to take said property, or make any claim thereto, under said proceedings.

" In witness whereof, the said Maine Water Company has caused the corporate seal to be affixed and these presents to be subscribed by Weston Lewis, its president, thereto duly authorized this 6th day of May, A. D. 1897.

MAINE WATER COMPANY.

L. S.                          By Weston Lewis, President."

STATE OF MAINE.

Kennebec ss.                              May 6, A. D. 1897.

Then personally appeared the above named Weston Lewis, and acknowledged the foregoing to be the free act of said Maine Water Company.                Before me,

W. E. MAXCY,

Justice of the Peace."

A like instrument (with proper description of premises) was executed and recorded and delivered to W. B. Arnold and Sarah H. Furbish. Both instruments were received and retained by the petitioners.

July 6, 1897, these petitioners filed with the county commis-sioners a motion for a warrant of distress to issue against the company and its property for the payment of the damages awarded to them by the commissioners, which motion was denied August 5, 1897; and October 22, 1897, they filed their petitions for a writ of mandamus. The answer of the commissioners is in effect that they are not informed as to their duty in this respect and that they were and are ready to issue such warrant if so directed by this court, to which they refer the questions raised by the parties. The answer of the Water Company sets up several points of defense which are hereinafter referred to and discussed.

The Water Company has not taken actual possession of the property which it sought to condemn, but have continued to use the water of the stream as theretofore. At the time of the filing of the certificate in the office of the county commissioners, the premises therein described were occupied by the petitioner's tenants who have since continued in such occupation.

The Maine Water Company was authorized by the acts of the legislature hereinbefore referred to, to take the property of the petitioners, and its proceedings in that respect, as well as those for an award of damages, were in accordance with the statutes of the State.

It is contended in behalf of the defense that the damages are not payable until the land has been entered upon and possession

taken by the company for construction and use, and that, as the company has not made such entry and taken such possession, no warrant of distress can issue to enforce payment of damages. By the terms of the charter of the Waterville Water Company damages for lands taken by it, when the amount cannot be mutually agreed upon, shall be " ascertained in the same manner, and under the same conditions, restrictions and limitations as are by law prescribed in case of damages by the laying out of highways." To sustain their position that damages are not payable until the land is taken, counsel for defense rely upon § 7, ch. 18, R. S., 1883, which provides that the commissioners " shall not order such damages to be paid, nor shall any right thereto accrue to the claimant, until the land . . . . has been entered upon and possession taken, for the purpose of construction and use." The statute of 1871 did not contain this provision, but provided, ch. 18, § 7, that " payment of damages may be suspended until the land, for which they are assessed is taken." By ch. 53 of the Public Laws of 1881, § 7 was amended so as to read as it appears in the revision of 1883, above quoted. This act of amendment was approved March 12, 1881. As no different time was named therein, it became effective in thirty days after the recess of the legislature passing it. R. S., ch. 1, § 5. The act granting the charter to the Waterville Water Company was approved March 16, 1881, and became in force on the date of its approval. R. S., ch. 1, § 6, p. XXVI.

It follows that the law, in this respect, at the date of the charter of the Waterville Company was that of 1871, and not the law as amended in 1881 and now contained in the present statute. The question is whether, with respect to the time when the damages awarded to the petitioners became payable, the statute of 1871, or the statute as amended in 1881, shall control. We have no doubt that the statute of 1871 must govern. We regard it as an established principle, that when a private or special act of the legislature incorporates by reference the provisions of an existing general statute, it means that the provisions of the general statute, in their exact form, become a part of the special statute, precisely as though

such provisions were written into the special act, which is not affected by the amendment or even by the repeal of the general statute.

This has been so held by this court in *Collins* v. *Blake*, 79 Maine, 218, and the principle is fully sustained by the authorities. *In re village of Sing Sing*, 98 N. Y. 457; *Darmstaetter* v. *Moloney*, 45 Mich. 625; *Crosby* v. *Smith*, 19 Wis. 472; *Flanders* v. *Merrimac*, 48 Wis. 567; Endlich on Interpretation of Statutes, §§ 85, 233, 492.

The commissioners might, therefore, in the case at bar, have suspended the time of payment until the land was entered upon by the company for its purposes, but they were under no obligation to do so. The power conferred upon them was permissible, not mandatory.

In *Kimball* v. *Rockland*, 71 Maine, 137, the plaintiff sued to recover damages awarded him for land taken by the city of Rockland for street purposes. The land had not been actually taken or entered upon by the city. There, as here, the record was silent as to the time when the damages should be paid. The court held that the plaintiff was entitled to recover and gave him judgment. We regard this case as decisive against the defendant upon this point, and are of opinion that the damages became payable to the petitioners when the report of the county commissioners was accepted and the proceedings closed.

It is further contended by the defense that, notwithstanding the proceedings for the condemnation of the petitioners' property and for the awarding of damages, it had the right to revoke and renounce such proceedings and abandon and surrender the property to the petitioners at any time before actually entering upon and taking possession of the premises, and that, by its instrument of May 6, 1897, it did so revoke and renounce such proceedings and did abandon and surrender the premises to the petitioners and that thereby it is relieved from the payment of the damages awarded.

A corporation, public or private, by taking land as for public use by lawful condemnation proceedings, does not acquire legal, permanent possession thereof until compensation therefor is paid or

waived. Constitution of Maine, Art. 1, § 21; *Perkins* v. *Me. Cent. R. R.*, 72 Maine, 95.

But we regard it settled by the great weight of authority that, after such proceedings have been perfected and the damages for the land taken have been finally ascertained and adjudged by the proper tribunal, the corporation thereby acquires a vested right to hold and use the land taken on payment of the compensation awarded, and that the land owner acquires a vested right to have and recover the damages awarded. The corporation cannot evade payment of damages by revoking the proceedings or by surrendering the land without the consent and agreement of the land owner. The English courts have maintained the doctrine, as well in public street improvements as in railway and other corporations, that where, by act of Parliament, street commissioners or the managers of railway or other corporations, are authorized to acquire title to land by appraisement, after giving notice to the owner to treat or submit to an appraisement, the mere giving the notice is an election to purchase at an appraisal; and that this election, being binding on the owner of the land, is also binding on the street commissioners or corporation. *The King* v. *Commissioners of Manchester,* 4 B. & A. 335; *The King* v. *Hungerford Market Company*, 4 B. & A. 327; *Stone* v. *Commercial Railway Company*, 4 Mylne & Craig, 122; *Walker* v. *Eastern Counties Ry.*, 6 Hare, 594. In *Hallock* v. *County of Franklin*, 2 Met. 559, the law is thus stated by Shaw, C. J.: "By the judgment establishing and locating the highway, before any act done towards fitting it for use, the rights of the parties are fixed and vested, and the public acquire a right to the public easement; and the right of the owner of the land over which it passes, to his compensation, is complete." The same learned jurist had previously said in *Harrington* v. *Co. Coms.* 22 Pick. 267, "The court are of opinion, that when the highway is once completely established, and the damages of the land once settled by the modes pointed out by law, the right of the public to a perpetual easement in the land for a highway . . . . becomes complete, and the right of the owner to his damages or compensation for the lien or qualified right acquired by the public in his land, becomes complete."

The law thus laid down has been sustained by numerous cases in Massachusetts, the latest case being that of *Imbescheid* v. *Old Colony Railroad*, 171 Mass., 210, in which an array of authorities of that state are cited.

In New York the court has maintained the doctrine above laid down. In *People* v. *Gas Light Co.*, 78 N. Y. 56, the court held that when land has been taken for public uses under the right of eminent domain and the proceedings have so far progressed that the amount of compensation to the owner has been fixed as a finalty, the proceedings cannot be discontinued or abandoned, and the owner has a vested right to the compensation. See cases there cited.

It is held in New Jersey, *Butler* v. *Sewer Commissioners*, 39 N. J. L. 665, that when the amount of compensation for land taken is once fixed by the tribunal which the law has provided, even the legislature cannot authorize postponement of payment. Reed, J. says: "I am clear that, when the amount of compensation is once fixed, the owner, as constrained vendor, is entitled to recover his price."

Mills on Em. Dom., § 319, states the rule as follows: "The ancient rule was that when a street had been laid out, the damages were due, although no entry had been made for the purpose of construction. The rights of the parties were considered as fixed by the laying out, although the highway was forthwith discontinued, or was never, in fact, opened."

The rule laid down in the authorities cited appears to have been recognized by this court in *Westbrook* v. *North*, 2 Maine, 179; *Kimball* v. *Rockland*, supra, and *Millett* v. *County Coms.* 80 Maine, 428, 429, and we regard it to be the law of this state except so far as it has been modified by statute. The only legislative enactments of the state restricting the rule is § 10, ch. 18, R. S., which is as follows: "When the way is discontinued before the time limited for the payment of damages, the commissioners may revoke their order of payment and estimate the damages actually sustained, and order them paid." If this section applies to cases other than those for land taken for ways, which we doubt, it can

have no bearing in the case at bar. As before stated, the damages awarded to the petitioner became due when the proceedings were closed at the April term of the commissioners' court; the notices of abandonment were not executed till May 6, 1897, after the time limited for the payment of damages.

We do not think that the petitioners by receiving and retaining the " Notices of Abandonment" waived their claims for the damages awarded them. Those notices were sent to the petitioners by mail unaccompanied by any request to accept or return them. They purported to be notices of abandonment and the petitioners were justified in regarding them merely as notices. They have made no claim under them but have consistently insisted upon payment of the sums awarded them. We therefore hold that the Water Company's attempted revocation and abandonment were ineffectual, and that neither the rights of the petitioners nor the liabilities of the company are thereby affected.

The fact that the premises condemned have remained in the possession and occupancy of the petitioners' tenants since the proceedings for condemnation were commenced, does not preclude the petitioners from collecting their damages nor in any way affect their rights. *Imbeschied* v. *Old Colony Railroad*, supra.

Our conclusion is that the damages awarded to the petitioners became due when the proceedings on the petition to estimate damages were closed, and that the Maine Water Company are liable to pay the same.

The county commissioners had authority to issue the warrant of distress prayed for by the petitioners. Section 18, ch. 78, R. S., 1883, which is in the same language as Sec. 15, ch. 78 of R. S., 1871, is as follows: " Warrants of distress, on judgments legally rendered by the county commissioners, may be originally issued within two years after judgment and made returnable to the clerk's office within ninety days from their date." Following the rule laid down by this court in *Low* v. *Dunham*, 61 Maine, 566, and *Monmouth* v. *Leeds*, 76 Maine, 28, we think this section is mandatory upon the commissioners, and makes it their duty to issue warrants of distress to enforce their judgments. In *Low* v. *Dunham*,

the language construed was, "the court may issue an order to the attaching officer to sell," etc. The court held that it was not the intention of the legislature that it should be left to the discretion of the court whether an order should issue or not, and stated the rule as follows: "The word 'may' in a statute is to be construed 'must' or 'shall' where the public interests or rights are concerned, and the public or third persons have a claim de jure that the power shall be exercised." The case of *Monmouth* v. *Leeds* is to the same effect. The rule thus laid down is fully sustained by the authorities cited by the court in those cases. So we hold that it was the duty of the commissioners to issue to the petitioners a warrant of distress to enforce payment of the damages awarded them and that the petitioners had a claim de jure that such duty should be performed.

The commissioners denied the motion of the petitioners for such warrant of distress and refused to issue the warrant. Has this court authority to compel the commissioners to perform their duty in this respect? We think it has. Mandamus is defined by High's Extra. Legal Rem. § 1, to be "A command issuing from a common law court of competent jurisdiction, in the name of the state, directed to some corporation, officer, or inferior court, requiring the performance of some particular duty therein specified, which duty results from the official station of the party to whom it is directed, or from operation of law." The definition is substantially that given by 3 Blackstone, Com. 110. The writ of mandamus has frequently been granted to compel an inferior court to issue process to enforce its judgments. In *State, ex rel. Bauman* v. *Hoboken Dist. Court*, 49 N. J. L. 537, the writ was issued to the District Court, commanding it to issue execution improperly withheld. In *People* v. *Common Council*, 78 N. Y. 56, it was issued to the respondents to compel them to proceed to the assessment and collection of a tax to pay damages awarded by the council for land taken for street purposes. *Postmaster Gen.* v. *Trigg*, 11 Peters, 173, was a petition for mandamus to compel the Judge of the District Court to issue execution on a judgment entered up by that court. The court refused the writ on grounds

stated in the opinion, but did not intimate a want of jurisdiction
to order the writ if a proper case had been made out.    Writs of
mandamus were issued to justices of the peace to compel the issu-
ance of executions on judgments rendered by them in *Terhune* v.
*Barcalow*, 11 N. J. L. 38, and in *Laird* v. *Abrahams*, 15 N. J. L.
22.    *Harrington* v. *Co. Coms.* supra, is a case in point.    A high-
way had been laid out and damages awarded.    *Held;* that the land
owner had a vested right to such damages, and that he was entitled
to a writ of mandamus to the commissioners to compel them to
draw an order for the payment thereof.    In *Waldron* v. *Lee*, 5
Pick. 323, it was held that a writ of mandamus lies to compel a
town treasurer to issue his warrant of distress against a collector of
taxes neglecting to collect and pay over the same at the time fixed
in the assessors' warrant to the collector.

The recent case in this state of *Adams* v. *Ulmer*, 91 Maine, 47,
is very nearly in point.    The court granted the writ directed to
the clerk of the county commissioners court, commanding him to
issue a warrant of distress, as directed by the commissioners for
the collection of a judgment rendered by the county commis-
sioners.

It is objected by the defense that the court cannot compel the
issuing of a warrant of distress by its writ of mandamus because
the petitioners have an adequate legal remedy at law by an
action of debt to recover their damages.    It is a general rule that
mandamus will not be granted when the petitioner has an adequate
specific legal remedy at law, but to such rule there are exceptions.
3 Blackstone, Com. 110, says that the writ " may be issued when
the injured party has also another more tedious method of redress;
but it issues in all cases when he hath the right to have anything
done and hath no other specific means of compelling its perform-
ance."    Mr. High, (High's Extra. Legal Rem., § 17,) states the
law as follows: "It is to be borne in mind, however, that the
existing legal remedy relied upon as a bar to interference by
mandamus, must not only be an adequate remedy in the general
sense of the term, but it must be specific and appropriate to the
particular circumstances of the case.    That is, it must be such a

remedy as affords relief upon the very subject matter of the controversy, and if it is not adequate to afford the party aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy. . . . . And by a remedy at law, such as will operate as a bar to mandamus is understood such a remedy as will enforce a right or performance of a duty; and unless it reaches the end intended and actually compels a performance of the duty in question, it is not an adequate remedy within the rule under discussion."

In the case at bar, the statute requires of the commissioners the performance of a particular duty. The petitioners have the right to the performance of such duty. They have no other remedy than mandamus to compel its performance. We do not think that their right to recover their damages by an action at law precludes the court from compelling the commissioners to perform the duty imposed upon them by statute.

By agreement of parties the pleadings are to be regarded as the alternative writ and the court is authorized to grant the peremptory writ. No damages are claimed or assessed.

*Peremptory writ to issue as prayed for.*

*Petitioners to recover costs against the Maine Water Company, defendants in interest.*