THE DORCOURT COMPANY

*vs.*

GREAT NORTHERN PAPER COMPANY

Kennebec.    Opinion, June 12, 1951.

*McLean, Southard and Hunt,* for plaintiff.

*Louis C. Stearns,*
*Louis C. Stearns III,*

*Thomas Allen,*
*Scott W. Scully,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, JJ.   (WILLIAMSON, J., did not sit.)

MERRILL, J. On exceptions to the denial of a peremptory writ of mandamus by a single justice of this court. The proceeding was initiated against Great Northern Paper Company by a petition of New England Trust Company, Trustee, and The Dorcourt Company. The first or alternative writ of mandamus was ordered to issue. The petition and alternative writ were then amended, on motion, by striking out New England Trust Company, Trustee, as a party plaintiff thereto. Issue was joined on the return to the alternative writ. The peremptory writ was denied, and exceptions to the denial of the writ certified to the Chief Justice.

The Dorcourt Company is seeking to compel the Great Northern Paper Company "to maintain, repair and improve Stratton Brook Dam so that said Dam will be at the effective height at which it was maintained on April 22, 1936, and so that it will be sufficient to raise a head of water to facilitate the driving of logs, pulp wood and other lumber down Stratton Brook," which brook discharges into Dead River, one of the branches of the Kennebec.

By Private and Special Laws 1907, Chap. 234, the Legislature granted to one Albion L. Savage, his associates, successors and assigns, a charter authorizing them to erect dams, including those theretofore erected by him, and to make other improvements in Stratton Brook for the purpose of facilitating the driving of logs, pulp wood and other lumber down said brook, and raising a head of water therefor. Said charter also authorized the charging of tolls, and granted the right of eminent domain. It further provided that when the tolls collected equalled the cost of the improvements, together with six per cent interest, they should be reduced to a sum sufficient to keep the works in repair. There was no provision in the charter which in express terms imposed any duty or duties upon the holder thereof. This charter was duly accepted by Savage. By quit-claim

deed, Savage purported to convey to Great Northern Paper Company his interest and rights under said charter as of September 6, 1911. Great Northern Paper Company built a dam at the outlet of Stratton Brook Pond, on which dam it made its last repairs sometime during the nineteen twenties. At the time of the institution of these proceedings the dam had been destroyed by fire. The Great Northern Paper Company had never charged tolls for the use of the facilities. The Dorcourt Company demanded that the respondent rebuild the dam, which the respondent refused to do.

The Dorcourt Company is the owner of standing timber on the watershed of Stratton Brook, but it is neither engaged in the business of cutting and removing the timber from the soil and delivering the same to purchasers, nor does the record show that it either had or has any present intent so to do. As stated in its brief "Petitioner (The Dorcourt Company) is in the business of selling stumpage. It does not cut the logs nor drive them to market." Nor does the record disclose that if the prayers of the petitioner were complied with, and Great Northern Paper Company rebuilt Stratton Brook Dam, that a single cord of pulp wood or a single stick of long lumber would be driven down Stratton Brook.

The position of the petitioner as established by the facts in the record is not that the respondent is failing to maintain facilities to drive lumber which the petitioner has ready to be driven down Stratton Brook, or even lumber which definitely will be made ready by it, or purchasers from it, to be driven down Stratton Brook. The basis of the petitioner's complaint, on the facts in the record, is that the failure of the respondent to continually maintain the Stratton Brook Dam so that a potential purchaser of lumber from it could, if it desired, drive lumber down Stratton Brook interferes with the marketability of the petitioner's standing timber.

The procedure relative to mandamus in this State is statutory. It is found in R. S., Chap. 116, Secs. 17 to 20, both inclusive. Although the statute does not in express terms provide for the allowance and certification of exceptions if the peremptory writ be denied, this court in *Lawrence* v. *Richards,* 111 Me. 95, held that it was the manifest intent of the legislature that the petitioner be entitled to prosecute exceptions in matters of law if the peremptory writ were refused.

It is further to be noted that there is no provision in the law for sending a mandamus case back to the justice who heard the case for a rehearing. It must be sent to the Law Court, if at all, in such shape that the decision of the Law Court will be the final disposition of the case. See *Hamlin* v. *Higgins,* 102 Me. 510 at 520; *Libby* v. *Water Company,* 125 Me. 144, 146. Such being the situation, if exceptions to the refusal of the peremptory writ are to be of any advantage to the petitioner, the case must come to the Law Court on such a record that if the exceptions be sustained, the peremptory writ may then be ordered to issue. As a peremptory writ of mandamus is issued only in the exercise of sound legal discretion by the court, the record accompanying the exceptions to the denial of the peremptory writ must disclose a state of facts which requires the issue of the peremptory writ as a matter of law. Unless such state of facts be disclosed by the record, any erroneous ruling by the single justice in denying the peremptory writ cannot be legally prejudicial to the petitioner and the exceptions must be overruled.

The writ of mandamus is not an ordinary writ to be sued out as a matter of course. As said in *Edwards Mfg. Co.* v. *Farrington,* 102 Me. 140, 142:

"It is an extraordinary writ to be issued only when it is made to appear clearly to the court that the writ is necessary to secure some substantial

right, and also that it will be effective to secure that right. As said in 19 Am. & Eng. Ency. 757, 758, the writ should not be issued 'where, if issued, it would prove unavailing, fruitless, and nugatory.' 'A mere abstract right, unattended by any substantial benefit to the relator, will not be enforced by mandamus.' See *Rex* v. *Justices*, 2 B & A 391; 22 E. C. L. 108; *Mitchell* v. *Boardman*, 79 Maine 469; *Tennant* v. *Crocker*, Mayor, 85 Mich. 328; *State* v. *Board of Health*, 49 N. J. L. 349."

The following statements from American Jurisprudence and Spelling on Extraordinary Relief are particularly applicable to the situation here presented.

"The office of mandamus is to compel the performance of a specific and positive duty imposed by law, and the writ will not be granted unless it appears that there has been a plain breach or dereliction of duty on the part of the respondent." See 34 Am. Jur. Page 867, Sec. 78.

"Mandamus is used to compel the performance of a present existing duty as to which there has been an actual default, and it is not granted to take effect prospectively. The writ, that is, will not ordinarily be awarded to compel the performance of an act unless the act is one which is actually due from the respondent at the time of the application. Until the time arrives when the duty should be performed, there is no default of duty; and mere threats not to perform the duty will not, as a rule, take the place of default. So, it has been stated that mandamus will not be issued in anticipation of supposed omission of duty, however strong the presumption may be that the person whom it is sought to coerce by the writ will refuse to perform his duty when the proper time arrives. This, however, is a general rule merely and does not prevent the use of mandamus to control the performance of prospective duties where the exigencies of the case demand it." 34 Am. Jur. Page 868, Sec. 79.

As said in Spelling on Extraordinary Relief, Vol. II, Sec. 1385:

> "A relator is not entitled to the writ unless he can show a legal duty then due at the hands of the respondent; and until the time arrives when the duty should be performed, no threats or predetermination not to perform it can take the place of such default. The law does not contemplate such a degree of diligence as the performance of a duty not yet due. The general rule is that the writ will not be granted in anticipation of a supposed omission of duty, however strong the presumption may be that the person sought to be coerced by the writ will refuse performance at the proper time. An important reason for refusing the writ in such cases is, that until the duty is due, no practical question can be presented to the court, but simply a supposed case."

The purpose for which the Savage charter was granted, and on which charter the petitioner bases its entire claim, was that of "facilitating the driving of logs, pulp wood and other lumber" down Stratton Brook. The duty to maintain facilities imposed by the charter, if any there be, is to maintain them for facilitating the driving of such logs, pulp wood and other lumber and such only as is to be actually driven down said brook. The only persons, if any, in whose favor that duty is imposed by the charter are those who have logs, pulpwood and other lumber *to be driven* down Stratton Brook. As said in *Sterns Lumber Company* v. *Penobscot Bay Electric Company*, 121 Me. 287, which involved a dam company charter:

> "The sole purpose of this charter was to benefit the log owner and to assist him in getting his logs out of the stream in the spring season."

Although, as shown by the above quotations from American Jurisprudence, under certain conditions it may be proper to issue a writ of mandamus to compel the performance of a duty prior to the time when its performance will

be due, a writ of mandamus will not issue before a default in the performance of a duty to compel the performance of such duty *unless at the time of the issue of the writ it is absolutely certain that there will be occasion for the performance of the duty*.

In the instant case, as above shown, the petitioner itself has no intent of driving any lumber down Stratton Brook. If it sells its stumpage there is no surety that the purchaser will drive the stumpage so purchased, when converted into logs or pulpwood, down Stratton Brook. The issue of a writ of mandamus compelling the Great Northern Paper Company to rebuild Stratton Brook Dam at this time and at a cost which the evidence discloses may approximate $19,000, might be a wholly futile thing. There being no *present duty* owed by the Great Northern Paper Company to the plaintiff to rebuild Stratton Brook Dam and maintain the same for driving purposes, the action of the single justice in denying the peremptory writ was correct. Had he ordered the writ to issue, on the present record it would have been the duty of this court to sustain exceptions thereto and order the writ quashed. The foregoing considerations being sufficient for the disposal of the case we need not consider other issues presented.

*Exceptions overruled.*