CHEQUINN CORPORATION

*vs.*

WILLIAM MULLEN, ET AL.

Cumberland. Opinion, August 19, 1963.

*Bennett and Schwarz,*
 *by Robert D. Schwarz,* for Plaintiff.

*William P. Donahue,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, SULLIVAN, SIDDALL, MARDEN, JJ. TAPLEY, J., did not sit.

WILLIAMSON, C. J. This is an appeal from denial of a peremptory writ of mandamus after hearing on alternative writ, answers, replies, and proof. R. S., c. 129, §§ 17, 18.

The plaintiff corporation seeks to compel the municipal officers or town council of Old Orchard Beach, the named defendants, to issue a victualer's license and to approve applications to the State Liquor Commission for a "restaurant malt liquor license" and for a "special amusement permit for dancing and entertainment" at the "Barn," so-called. After hearing the council refused to grant a victualer's license and tabled the other applications. Without approval of a victualer's license action on the other applications would have been pointless.

By ordinance adopted pursuant to a 1961 Act, the municipal officers of Old Orchard Beach were empowered to grant the desired victualer's license. The general statute under which the "municipal officers, treasurer and clerk of every town" constitute the "licensing board" was to this extent modified in the case of Old Orchard Beach. There is no suggestion indeed by the parties that the application for the license was not presented to and heard by the proper body, namely, the municipal officers or town council. Old Orchard Beach Ordinance, June 13, 1961, as amended March 5, 1963, adopted pursuant to P. & S. Laws, 1961, c. 176, "An Act Relative to the Granting of Licenses for Certain Businesses and Purposes by the Municipal Officers of the Town of Old Orchard Beach and the Town of Bar Harbor"; R. S., c. 100, § 29 — victualer's license; R. S., c. 61, §§ 24, 40 — State Liquor Commission license and entertainment permit.

The defendants contend that the plaintiff abandoned the mandamus proceedings by withdrawing its several applications from the town officers between the council hearing

and the start of the present case. It does not appear that the point was urged upon the sitting justice, and in any event, we are convinced that irregularities in procedure, if any, have been waived. We strike for the merits of the case.

The victualer's license statute reads in part:

"... they [the licensing board] may license under their hands as many persons of good moral character, and under such restrictions and regulations as they deem necessary, to be innkeepers and victualers in said town, .. " R. S., c. 100, § 29.

"The permission to conduct an inn is not granted to all who may apply for a license; it is not a right to be exercised by one at will, but a privilege to be exercised when granted by municipal officers. The last named officers may not at will grant such license, their duty is defined by statute, and they may issue licenses to such persons only as are of good moral character." *Goodwin* v. *Nedjip*, 117 Me. 339, 342, 104 A. 519.

The statute carries no right of appeal from a denial by the board (or as here the municipal officers or town council). On revocation or suspension, however, the licensee may appeal to the Superior Court. R. S., c. 100, § 51; *Kovack* v. *City of Waterville*, 157 Me. 411, 173 A. (2nd) 554.

Mandamus is designed to compel action and not to control decision. The writ is granted in the sound discretion of the court. It is not a writ of right. *Dorcourt Co.* v. *Great Northern Paper Co.*, 146 Me. 344, 81 A. (2nd) 662.

The writ reaches the issue of whether a board, as the town council of Old Orchard Beach, has acted upon an application for a license, but not the issue of whether the

license should have been granted, except when abuse of discretion has resulted in manifest injustice. In this event, mandamus is available to promote justice in the absence of other adequate remedy. Such abuse of discretion is not the exercise of discretion required of a board in the carrying out of its lawful duties. It is upon this theory that the petitioner seeks to overcome the decision of the sitting justice.

> "There are, however, cases which show that, if the discretion of the court below is exercised with manifest injustice, the court is not precluded from commanding its due exercise."
> *Davis* v. *County Commissioners,* 63 Me. 396, 398.

> "There are cases that, if, under the guise of discretion, manifest injustice is done, the court is not precluded from constraining that official action be honestly performed; that discretion, not its abuse, shall operate and have effect, and not be arbitrarily or capriciously refused."
> *Rogers* v. *Selectmen of Brunswick,* 135 Me. 117, 120, 190 A. 632.

> "But if a discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise. They will interfere, where it is clearly shown that the discretion is abused. Such abuse of discretion will be controlled by *mandamus.* A public officer or inferior tribunal may be guilty of so gross an abuse of discretion, or such an evasion of positive duty as to amount to a virtual refusal to perform the duty enjoined, or to act at all in contemplation of law. In such a case *mandamus* will afford a remedy."
> *Illinois State Board of Dental Examiners* v. *People* (Ill.) 13 N. E. 201, 202.

> "Courts are very reluctant to interfere with the power vested in municipal bodies and officers to grant or refuse licenses and permits, and will not

do so except in a clear case of abuse. And when county commissioners refuse to grant a license to retail liquor, on the ground that the applicant is not a fit person, mandamus will not lie to compel the commissioners to grant it; . . . ."
Spelling, Injunctions and other Extraordinary Remedies, § 1476.

*Comm. of Maxton et al.* v. *Comm. of Robeson County* (N. C.), 12 S. E. 92, cited for the above proposition, arose on demurrer to answer asserting applicants had not established good moral character. The court said, at p. 93:

"The demurrer admitted these allegations to be true. It is settled that upon such state of facts a *mandamus* could not issue."

See also *Casino Motor Co.* v. *Needham, et al.,* 151 Me. 333, 118 A. (2nd) 781; *Nichols* v. *Dunton,* 113 Me. 282, 93 A. 746; *Lawrence* v. *Richards,* 111 Me. 95, 88 A. 92; *Furbish* v. *Co. Com.,* 93 Me. 117, 44 A. 364; *Smyth* v. *Titcomb,* 31 Me. 272; *Proprietors of Kennebunk Toll Bridge,* 11 Me. 263; 55 C. J. S., *Mandamus,* § 156 (c), p. 297; 34 Am. Jur., *Mandamus,* § 69, Ferris, Extraordinary Legal Remedies, § 209.

The sitting justice, in denying the peremptory writ, said:

" . . . there is evidence that some of the councilors possess a well recognized and definite prejudice against some of the officers of petitioner corporation.

"The councilors had before them ample evidence to warrant a denial. Under these circumstances the existing prejudice became immaterial."

On request, he also made the following supplemental findings:

"The councilors did not have before them for consideration at the stated and lawful meeting of

April 18th any credible or admissible evidence bearing on the bad moral character of any officers of the Chequinn Corp. or their immediate families. I do not consider the fact that any hearsay evidence that was called to their attention before the meeting of alleged criminal records of Henry McCue, father of one of the officers of the corporation, as admissible or credible evidence to be considered as coming from the hearing of April 18th.

"There was no evidence in the case that the councilors relied on the criminal record of Henry McCue excepting one councilor said he was influenced by it and another said that he was not.

"There were one or more councilors who exhibited a strong and unmistakable bias against one or more members of Chequinn Corp. or their immediate families to the extent, in my opinion, that would make them incompetent to render a fair and impartial decision as a result of the hearing on April 18th. Councilor Sicard demonstrated such a personal interest that it could have influenced his vote.

"One or more councilors, prior to the hearing of April 18, 1963, told Henry McCue that the licenses to The Barn would be denied."

The plaintiff in its brief argues that the decision was fatally defective through prejudice and bias of certain members of the council, and that accordingly it is entitled to force or compel the granting of a license through mandamus. The two licenses and the permit — victualer's, and sale of malt beverages — were necessary for the continued operation of the "Barn" in the 1963 season. For our immediate purpose we need direct our attention only to the victualer's license.

The town council is the only body authorized to grant a victualer's license. If in fact its members were prejudiced or biased, they could not withdraw from, or be pushed

aside from, or escape their lawful duties. Prejudice and bias may well lead a court to weigh with greater care evidence tending to show abuse of discretion, but taken alone, they do not force such a finding. The test here lies in the evidence from which the council reached its conclusions. This, in our view, is the intended meaning of the plaintiff's argument, that is to say, that only in the abuse of discretion could the council have refused the license.

The good faith of a public official is not lightly to be denied. Proof of prejudice and bias sufficient to overcome the sense of responsibility to office and to community must be heavy. The sitting justice was fully justified in finding "the existing prejudice" was immaterial.

Under the victualer's license statute, the licensing board is charged, as we have seen, with the duty of licensing only "persons of good moral character." The remaining conditions of Section 29 are not here of concern. There is no suggestion that either the number of licensees in Old Orchard Beach or the failure to meet stated restrictions and regulations were in issue before the council. The "good moral character" of the victualer or innkeeper is obviously of great importance to the public. Like standards are established in other situations, for example, on admission to practice of an attorney and on licensing of a physician and surgeon. R. S., c. 105, § 3; R. S., c. 66, § 4.

Under familiar law the burden of establishing his good moral character is upon the applicant for the license to carry on the desired business or profession. In the case at bar, we understand the findings of the sitting justice to be in substance that there being no credible or admissible evidence of bad moral character before the council, good moral character was established, and that on other ample evidence the license was denied.

The council had evidence of noise and disturbances in the neighborhood from the operation of the "Barn" in 1962. It could readily infer and find that like conditions from improper or lax management would continue in 1963. This type of evidence, as we read the record and the findings, was considered by the sitting justice to be an adequate base for the adverse decision of the council. In the face of a finding of good moral character, the other "evidence" in our view would not have warranted the denial.

We reach, however, a like conclusion with the sitting justice for a different reason. The council had before it evidence credible and admissible, in our opinion, on the issue of the good moral character of persons involved and from which it could in the exercise of its discretion determine whether the applicant was a "person of good moral character."

The plaintiff Chequinn Corporation was organized in 1961 to operate the "Tide Inn" (not involved in this appeal) and the "Barn." Mr. Henry McCue, manager of the "Barn" in 1962 and 1963, and father of the president of the plaintiff and husband of its clerk, had a substantial investment in the plaintiff. He was intimately connected financially in his capacity as a manager with the plaintiff and with the "Barn." Unless Mr. McCue was a "person of good moral character," the council would be under a duty not to grant a victualer's license. The plaintiff does not escape the burden of association with Mr. McCue from the fact that he was not an officer, director, or stockholder.

Before the meeting at which the application for license was denied, the members of the council were informed that Mr. McCue had been convicted in Massachusetts over twenty years before of two serious crimes involving moral turpitude.

The convictions were not denied. The criminal record of Mr. McCue was a fact which the council was entitled to know and to consider. That the knowledge of the council of his record was not communicated to Mr. McCue at the hearing has no bearing on the lawfulness of the decision. Mr. McCue was not on trial. The issue was whether he was a "person of good moral character" in its bearing upon the application for a license.

There was also evidence before the council from witnesses in the neighborhood of the "Barn" to the effect that Mr. McCue had suggested that call girls would stop losses in a certain business, and that he had threatened one who complained of the "Barn" with a false charge of crime.

The finding relative to the reliance or non-reliance of councilors upon the criminal record of Mr. McCue is not material. The question is whether there was credible evidence which, if believed, warranted the decision of the council. We may not pry into the reasons behind the vote of each councilor to determine the validity of a decision based on adequate evidence.

On review of the record, we are satisfied that the council in the proper exercise of its discretion could have found that the plaintiff had not established that Mr. McCue was a "person of good moral character," and that the denial of a license to the plaintiff corporation with which Mr. McCue was so closely associated was justified.

There was no error in denial of the peremptory writ of mandamus.

The entry will be

*Appeal denied.*