No. 4011.

(Court of Appeal, Parish of Orleans.)

## SUCCESSION OF WILLIAM THOMPSON, SR.

The solvency or insolvency of a succession ,has nothing whatsoever to do with the right of the widow or minor children of a deceased person, to demand and receive from the succession of the deceased husband or father, a sum which added to the amount of property owned by the widow or minor children or either of them, will make up the sum of one thousand dollars. The only consideration which the law attaches to this right is that the widow and minor children shall have been left in necessitous circumstances

Appeal from Civil District Court, Division E.

P. G. Riddell for appellee.

A. E. Billings for Alice C. Thompson, appellant.

MOORE, J. This appeal is prosecuted from a judgment rejecting the asserted right of the widow to demand and receive from the succession of her deceased husband the so-called "homestead" allowance contemplated by Art. 3252 C. C. The facts are that the de cujes was twice married. By his first and predeceased wife he left eight children, all of whom are majors. Five children are the issue of his second marriage, three of whom are minors, their mother having duly qualified as their natural tutrix.

The succession is a small one, the sole asset consisting of a parcel of ground, acquired during the existence of the first community, and which subsequently sold at the succession sale for $835.00.

The widow and the minor heirs are admitted to be in necessitous circumstances, none of them possessing in their own right any property whatsoever.

The only debt left by the deceased was one amounting to $71.06 which represented the principal and interest of a promissory note executed by him and secured by ordinary mortgage on the lot of ground. The total cost of opening and adminis- tering the estate, including State and City taxes and insurance premium due by the property, amounts to $268.71. The ad-

21

ministrator, who was one of the issue of the first marriage, propounded his final account of administration, in which he states the assets to be the gross proceeds of the sale of real estate, $835.00, and the liabilities to be $339.77, which latter is made up of the costs of administration, etc , $268.71, plus $71.06 due on the mortgage note aforesaid. A balance of $495.28 is then struck, which balance he proposed to divide into two equal parts and to pay same over to the heirs in the proportion of one-eighth of one-half to each of the children of the first bed and one-fifth of one-half to each of the children of the second bed.

To this account and proposed distribution the widow and natural tutrix filed her opposition. The opposition is directed "to each and every item of the account as not being correct, except as to the gross proceeds of the sale," and to the tableau of distribution on the ground that as she and her minor children are in necessitous circumstances, the entire fund, less the expenses of selling the property, must be paid over to her under the provisions of Art. 3252 C. C.

Her opposition was rejected and the account and tableau as propounded homologated.

From this judgment opponent appeals.

It will be perceived from the facts stated that the succession is insolvent, that is to say that its assets are not sufficient to pay the debt left by the deceased after there shall have first been paid such debts and charges, as are declared by the law to be "privileges" and which entitles such creditors "to be preferred before other creditors, even those who have mortgages" C. C. 3186; the thousand dollars secured by law to the widow or minor children being enumerated as such privilege. C. C. 3252. Nor may it be doubted that forasmuch as the widow and her minor children in the instant cause are in the condition contemplated by this latter article, the opponent is entitled to the relief and to the beneficence designed by the law. The contention of the proponent, however, is that this homestead claim of the widow and minors can be demanded and received only from insolvent successions and never from a solvent one; that the instant succession is solvent, excluding this claim, which, not being a "debt," is to be excluded; that it is recoverable only in preference to creditors but not in preference to heirs and that to hold that this claim should be

paid in preference to the heritable portion coming to the heirs would be to hold that the law in reference to claims of this character was intended to change the order of succession, which it was not in the intendment of the legislator to do.

This was the view taken of the question by our brother or the lower Court whose written reasons for the judgment pronounced are as follows : "The Court considering that :

"1st. The one thousand dollars homestead granted by the Act of 1852, now Article 3252 of the Revised Civil Code, to the widow or minor children in necessitous circumstances, is recoverable only in insolvent successions, in preference to the creditors. Suc. of Justus 44 A. 721.

"2nd. The framers of the Act of 1852 did not intend to change the order of succession, nor did they intend to take from the heirs part of the estate to which they have succeeded immediately on the demise of the decedent, and give it to the widow or minor children. The intent was to bestow a benefaction upon the widow or minor children at the expense of the creditors in insolvent successions, in which there was no inheritence.

"3rd. Although ranked as a liability superior to all others except the vendor's privilege and the expenses of sale, the thousand dollars homestead is not a debt, it is a charity—a bounty—a personable right not heritable; hence it cannot be considered in ascertaining whether a succession is solvent or insolvent.

"4th. A succession is solvent when its assets are sufficient to settle all just claims against it, exclusive of the widow's or minors' homestead.

"5th. In a solvent succession the widow in necessitous circumstances is not without recourse; she can demand the marital fourth.

"6th The assets of this succession being in excess of the debts, the widow's claim for homestead cannot be allowed."

The solvency or insolvency of a succession has nothing, whatsoever to do with the right of the widow or minor children of a deceased person, to demand and receive from the succession of the deceased husband or father, a sum which added to the amount of property owned by the widow of minor children, or either of them, will make up the sum of one thousand dollars.

23

The only condition which the law attaches to this right is that the widow and minor children shall have been left in necessitous circumstances C. C. 3252.

The right to demand and receive this bounty is no more necessarily denied in a solvent succession, than it is necessarily allowed in an insolvent one. It may be as well denied or admitted in the one as in the other, for the right to claim it is altogether dependent upon the condition of the person in whose favor it is granted   Thus a succession may be hopelessly insolvent yet withal neither the widow nor minor heirs would be entitled to this so-called "Homestead right."

So, on the other hand, the succession may be absolutely solvent, and by solvent the law means only "the ability to pay one's debts," C. C. 3556. No. 26, not that it can do this and also leave a residium for the heirs—and still the widow or minor heirs would be entitled to this right.   In the one case it might be denied because the widow, or minor heirs, were not left in necessitous circumstances, whereas in the latter case they may have been so left.

Therefore it is that in claims of this character the law addresses itself to the sole inquiry : Is the claimant, whether widow or minor heir, a person who was left in the circumstances indicated by the statute? If this be answered in the affirmative then the solvency or insolvency of the succession, whilst it may affect the ability of the succession to pay in full or only partially the amount which the law allows cannot and does not affect or concern the *right* to demand and receive it.

The fundamental errors of proponent's argument are that it ignores, in the first place, the specific provisions of the Code which nominates a claim of this character as a privilege, the person in whose favor it exists as a creditor, and the claim itself as a debt; and, in the second place, the fact that heirs have no concern or interest in the succession of those from whom they inherit except as to the *residium*, which is what is left after all just debts and charges, both of the deceased and of the succession, have been paid and dis harged.   Under the general head of "Privileges" the Code provides: "The property of the debtor is the common pledge of his *creditors* and the proceeds of the sale must be distributed among them ratably, unless there exists among the *creditors* some lawful cause of preference."   C. C. 3183.

"Lawful causes of preference and privileges and mortgages." C. C. 3184.

"Privileges can be claimed only for those debts to which it is expressly granted in this code." C. C. 3185.

"Privilege is a right, which the nature of a *debt* gives to a *creditor* which entitles him to be preferred before other creditors, even those who have mortgages." C. C. 3186.

"Among *creditors* who are privileged, the preference is settled by the different nature of their privileges." C. C. 3187.

It will be thus perceived by these provisions of the Code that there can be no privilege unless there be a debt, and that there can be no debt which is privileged except such debts to which a privilege is "expressly granted in this Code." C. C. 3185.

Proceeding further under this general head the Code, under the sub-division: "Privileges which embrace both movables and immovables," enumerates six different character of privileges which extend alike to movables and immovables, and among the number the "Widow's Thousand Dollar Homestead," which the article declares "shall be paid in preference to all *other debts* except those for the vendor's privilege and expenses in selling the property." C. C. 3252.

Under the sub-head : "Of the order in which Privileged *Creditors* are to be paid" it is declared that : "If the movable property, not subject to any special privilege is sufficient to pay the debts which have a general privilege on the movables, *these debts* are paid in the following order." Then eighth different character of debts are enumerated in the order in which they are to be paid"; "the thousand dollars secured by law to the widow or minor children, as set forth in Article 3252; it is declared," shall be paid in preference to all other debts, except those for the vendors privilege and expenses incurred in selling the property." But whether this homestead be technically a *debt*, as nominated in the articles of the Code and as it is so affirmed in Gimble vs. Goode 13 A 352, Suc. Hunter 13 A. 257 and Suc. Daplain 113 La. 786, or it be a "claim" as it is termed in Suc. Carson 32 A. 192 and Suc. Fatjo 52 A. 1562, or a "portion" as it is spoken of in Suc. Darkin 30 A. 670 and Suc. Waddell, 44 A. 364, or a "charity or bounty," or "relief or benefaction" or "personal right not heritable" which it is termed in the opinion of the District Court, supra, it is unquestionably a liability of the Succession

25

to be taken into account and reckoned with as a privilege on the proceeds arising from the sale of both the movables and the immovables of the succession and as being entitled to payment in preference to all other debts, (except the vendor's) and necessarily in preference to the share and portion coming to the heirs, who themselves take nothing until all debts, privileges and charges are paid. This is the plain mandate of the law which legislation may change but which neither construction nor interpretation can altar.

The argument that the legislature by the adoption of the Statute did not intend to change the order of succession is admitted, but assuredly the classification of this claim as a privileged debt or charge and the fixation of the order in which it shall be paid, no more "changes the order of succession," than the fixation by the same article of the Code of funeral charges, law charges, expenses of last illness, the wages of servants. etc., etc., as privileges to be paid before a distribution is made to the heir, "changes the order of succession." Who may be called to the succession, and when he may go into possession and what he may succeed to is regulated by statute. The heir, under the law, succeeds not only to the rights but to the obligations of him from whom he inherits and under such terms and conditions as the statute may impose. The obligations which the heir succeeds to are not only those which resulted from the convention of theDe Cujes, but are likewise those imposed by the law ; and all of them must be acquitted by him for he takes nothing but the residuum. Therefore whether that residuum is great or small, or nothing, results not from any disturbance of the "order of succession," but from the pecuniary condition of the estate. The logical result of proponent's argument on this point would be that the entire fund of the estate, after the payment of the debts and obligations of the deceased, ought to be distributed to the heirs without any obligation on their part to discharge the debts and charges which have been incurred since the death of him from whom they inherit. Neither the funeral nor law charges should be first paid before a distribution to the heirs, for it is the same article of the Code which ranks them as privileges that declares the thousand dollar homestead a privilege, and commands payment in the order therein stated.

The sole basis for the contention that the widow's homestead under Act 3252 C. C. is recoverable only in solvent suc-

cessions is an isolated sentence in the opinion of the Supreme Court in Suc. Justice 44 A. 721 where the Court, discussing the question of the marital fourth, and drawing the distinction between it and the homestead claim said : "x x x the thousand dollars are allowed in insolvent successions in preference to creditors."

The paragraph where this sentence occurs is as follows:

(The marital fourth.)

"It may be assimilated to the charity or bounty extended, or conferred on the necessitous widow or minor heirs, by Act of 1852, now Art. 3252 R. C. C., with this difference, that the marital fourth is taken from a solvent succession or the heirs; while the $1,000.00 are allowed to insolvent successions in preference to creditors. Both are laws in derogation of common right." (Page 725.)

There is nothing in the language quoted which would warrant the conclusion that the Court intended to convey the idea that it was *only* in an insolvent succession that the homestead right could be claimed, any more than the Court intended to convey the idea that the *mere* fact that a succession was solvent entitled the surviving spouse to the marital fourth. If it did, it was clearly wrong in both.

A succession may be absolutely solvent, that is to say able to pay all the privileged debts and charges of the succession and all the debts and obligations of the deceased for solvency means only : "the ability to pay ones debts" Art. 3556 No 26 C. C. — and yet there may be left no residuum for the heirs. It was certainly not in the mind of the Court that in such a solvent succession the necessitous surviving spouse could claim the marital fourth. Under Art. 2382 C. C. the marital fourth is allowed only when the deceased wife or husband dies rich. To die *solvent* is not to die rich, although to die *rich* necessarily means to die solvent.

So too in the case of the necessitous widow's or minor heirs homestead claim. If the succession is solvent, that is to say able to pay all the privileged debts and charges of the succession, including the homestead claim, and all the debts and obligations of the deceased, although nothing be left to the heir, did the Court mean to imply that in such event the widow's claim should be stricken from the account, the creditors paid in full and the $1,000.00 set aside in the account as

27

coming to the widow transmitted to the heirs? Is it to be inferred that the Court meant that although the widow or minor heirs in necessitous circumstances are preferred to creditors and the latter to heirs, that the financial condition of the Estate may disturb this order so that although the creditors may still prime the heirs and be still subordinate to the widow, the heirs nevertheless prime the widow? Whilst the language of the Court is inartistically and loosely constructed and not absolutely technically correct, it is clear at any rate, that no such idea was intended to be conveyed either as to the marital fourth or as to the widows homestead. We are of opinion therefore that the opposition must be sustained. The item $71.06 placed on the account as due the ordinary creditor must be stricken therefrom which thus increases the net balance to $566.29. One half of this, $283.14, belongs to the second community and the widow in necessitous circumstances is therefore entitled to it.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby avoided, set aside and reversed and that the opposition of Alice Thompson widow of William Thompson be and the same is hereby sustained and accordingly that she be paid by privilege and preference out of the succession funds the full and entire sum of Two Hundred and Eighty Three 14-100 dollars; the costs of both Courts to be paid by the succession.